BANK OF CHARLESTON v. DOWLING.

1. FRAUD.—The transactions by which the judgment debtor in this case managed to divest himself of his property, held to be a fraud upon his creditors.
2. LACHES—PLEADING.—In an action to set aside a deed or other paper for fraud, the plaintiff, to avoid the plea of laches, should allege that he had only obtained notice of the fraud within the statutory period, but the *onus* of proving notice is on defendant.
3. WILLS—LIMITATION OF ESTATES—TRUSTEE.—A will devising lands to a trustee, and authorizing him to sell it without accounting, or to dispose of it by will, or otherwise, vests an absolute estate in the trustee.

Before TOWNSEND, J., Barnwell, September, 1897. Modified.

Creditor's bill by the Bank of Charleston National Banking Association *v*. J. C. Dowling, C. F. Dowling, and E. H. Dowling, in his own right, and as executor of Virginia S. Dowling, Henry Spann Dowling, Decania Dowling, and Lina E. Dowling. The Circuit decree is as follows, omitting the formal parts and the statement of the testimony and discussions thereof:

I do not hesitate to say that the evidence satisfies me that all these transactions were entered into by these parties for the purpose of protecting the property of E. H. Dowling from his creditors, and of defeating and defrauding his creditors of their just debts. I have thought it best to refer, briefly, to certain other points alluded to in argument at the hearing, in order that the parties may have the benefit of my views respecting them, before the passage to the will. The testimony is, that the sheriff of the county of Barnwell set off a homestead in the lands in question to E. H. Dowling before the sale at which the Bank of Charleston claims to have purchased. After the assignment of homestead, the plaintiff excepted thereto. E. H. Dowling, at the sale by the sheriff, gave notice to the effect that persons purchasing at said sale would not obtain a good title to the

premises sold, for the reasons set forth in said notice, and disclaimed his right to homestead in said premises. There is no doubt that the said E..H. Dowling must be held to the admissions contained in said notice—at least, so far as the same affect the issues involved in this case. If they conflict with other statements of his in regard to title and possession, they must be considered in accepting his testimony, in passing upon these questions. But, in the view I take of the case, I am of the opinion that E. H. Dowling was entitled to a homestead in said premises at the time the same was attempted to be set off. It appears, however, that the homestead here was not perfected. Such being the case, proper proceedings should be had to assign to E. H. Dowling such homestead as he may be entitled to under the laws respecting homestead at the time the debts of the plaintiff were contracted. If the surrender of possession of the premises was, as contended by plaintiff, to E. H. Dowling, he thereupon occupied the position of mortgagee in possession and owner of said premises; subject, however, to the interest of Mrs. Barr under the bond and mortgage of J. C. Dowling and C. T. Dowling, assigned to her as collateral security to the debt of E. H. Dowling to her, hereinbefore referred to; and upon the payment of the debt of Mrs. Barr, he became entitled to the securities held by her, and had a title to said premises freed from the incumbrance of the Barr debt. Now, there can be no question that the Barr debt was paid; she so testifies, and the fact has been clearly demonstrated from what has been said in the previous part of this decree. I am satisfied, however, with the conclusions heretofore reached by me, namely, that the surrender of the premises was to E. H. Dowling. This being so, he at once became the mortgagee in possession, as before stated, and the said premises became subject to the lien of the judgments obtained against, and liable to levy and sale thereunder, and the purchaser at such sale would take a good title to the premises sold. But, even if these various transfers had vested the absolute title to the premises in

question in fee in Virginia Spann Dowling, and the same remained in her up to the time of her death, then, under the interpretation which I give to her last will and testament, I am of opinion that an absolute estate in said property passed to her husband, E. H. Dowling. Under the will, E. H. Dowling has absolute power to control and dispose of the property therein mentioned as he may deem fit and proper. And I hold, when the power to dispose of the estate devised is given absolutely by will, as in this case, the power overrides the trust attempted to be created, and gives the trustee the whole estate—an estate subject to and liable to be sold for his debts. No broader terms could be used to create an absolute estate than those used in the will of Virginia Spann Dowling. The will is as follows: "The State of South Carolina. In the name of God, amen. I, Virginia Spann Dowling, of the county of Barnwell, wife of Elijah H. Dowling, of the said county, being of sound mind, memory, and understanding, gratefully acknowledging God therein, but considering the certainty of death appointed unto all, and the uncertainty of the time thereof, do make, publish, and declare this present writing as and for my last will and testament, in the manner following: That is to say, that, in the first place, I desire Christian burial of my body, under the direction of my executor hereinafter named; and I direct that all my just debts, funeral and testamentary expenses, be fully paid and satisfied by my said executor with all convenient speed after my decease; then I give, devise, and bequeath all the real estate whereof I am or shall be seized, interested in or entitled to, or whereof I have or may have power to dispose, and also all and singular my personal estate, goods, chattels, moneys due, and effects, whatsoever and wheresoever, whereof, wherein or whereto I am or shall or may be or become interested in, or entitled unto, and every part and parcel thereof, respectively, and all my estate and interest thereto, with the appurtenances, unto the said Elijah H. Dowling and his successor or successors, by his last will and testa-

ment to be nominated and appointed, to and upon the trust that the whole and every parcel and portion thereof shall be, during the lifetime and capacity of the said Elijah H. Dowling, managed, controlled, exchanged, sold or otherwise disposed of at and by the discretion of the said Elijah H. Dowling, and without accountability therefor, and in accordance with any testamentary directions of the said Elijah H. Dowling, to the use, benefit, and behoof of my children, Henry Spann Dowling, Decania Dowling, and Lina E. Dowling, and such other child or children as shall be born of me unto the said Elijah H. Dowling, me surviving, during their minority, respectively, and to be equally distributed unto and among them, share and share alike, to them and their heirs; and it is directed that partition and allotment shall be in all respects subject to the discretion of my executor hereinafter named, and during his lifetime and capacity may be by him made; but thereafter, when the oldest of the said children surviving shall attain the age of twenty-one years, the same shall be made and effected by three or more family friends, to be by the said successor or successors selected, and his or their hand or hands, seal or seals, to that end and purpose duly appointed and authorized. And I do hereby nominate, constitute, and appoint my husband, the said Elijah H. Dowling, executor of this my will. In witness whereof, I, the said Virginia Spann Dowling, have hereunto set my hand and seal, this 24th day of February, in the year of our Lord 1886. Virginia Spann Dowling. [Seal.]"

The mere reading of the will must satisfy any one that Elijah H. Dowling is given, by the power contained in this will of his wife, an absolute control over all the property therein mentioned, and in which a trust is attempted to be created. Such being the case, the absolute power overrides the trust and gives him the whole estate. The conclusion reached by me is fully sustained by the following authorities: "The equitable title merges in the legal when they are united in one person." *Healey* v. *Alston*, 25 Miss., 190; 3

Jarman on Wills, 71. "If no precise period for the termi-
nation can be shown, it remains an estate in fee." 3 Jar-
man on Wills, 71. Said Haskell, J., in the case of *Blume*
v. *Evans:* "The Court inclines to a construction which fa-
vors the early vesting of estates, and against a construction
which divests an estate already vested." *Blume* v. *Evans*,
10 S. C., 82. "Wherever, therefore, the objects of the sup-
posed recommendatory trust are not certain or definite;
wherever the property, to which it is to attach, is not cer-
tain or definite; wherever a clear discretion and choice to
act, or not to act, is given; wherever the prior disposition
of the property imports absolute and uncontrolable owner-
ship; in all such cases, courts of equity will not create a
trust from words of this character." II. Story Eq., 331.
"Whenever any person gives property and points out the ob-
ject, the property, and the way it should go, that does cre-
ate a trust, unless he shows clearly that his desire expressed
is to be controlled by the party, and that he shall have an
option to defeat it." II. Story Eq., 329. "We may lay it
down as an incontrovertible rule, that where an estate is
given to a person generally or indefinitely, with a power of
disposition, it carries a fee; and the only exception to the
rule is where the testator gives the first taker an estate for
life only, by certain and expresss words, and annexes to it
a power of disposal." I. Sugden on Powers, p. 183. "A
valid executory devise cannot subsist under an absolute
power of disposition in the first taker." *Jones* v. *Bacon*, 28
Am. Rep., 2, 3. "The power of alienation belongs to a fee;
in fact, it is the very essence of a fee. Is the condition which
the latter portion of the clause attempts to attach to the de-
vise inconsistent with and repugnant to this devise? The
performance of the condition would require Moore to die in
possession of the real estate devised to him. In no other way
could he leave a will disposing of it. The condition, then,
is a direct and positive restriction upon the powers of alien-
ation. The will invests him with a fee, but the condition
strikes at the very substance of this fee, and if valid, would

take and destroy its most important and essential quality—the power of sale." *Moore* v. *Sanders*, 15 S. C., 442. "Where," says Sir Edward Sugden, "the intention is clear, a power may enable the donee to dispose of the fee, though no words of inheritance be used, as where a testator gives a power to sell the lands, the donee may sell the inheritance, because the testator gives the same power he had himself." Quoted in *Heimhauser* v. *Decker*, 38 N. J., 430; 18 Am. & Eng. Enc. of Law, 904. "After directing a sale of certain property, the will adds: I wish the proceeds of my real and personal estate, and the debts due me, after paying my debts, to be put at interest by my executors, and my wife to receive the interest; but, so long as she remains my widow, she is to be at liberty to receive from my executors or from my estate such part of it as she may choose, and to appropriate it as she believes to be just and right." Held: "All the estate to be directed to be sold and invested by his executors, passed absolutely to his wife." The language imports absolute dominion, and absolute dominion is one of the best descriptions of absolute property. *Miss. So. of M. E. Church* v. *Calvert's Adm.*, 32 Gratt. "An unlimited power of disposition given by will, carries the absolute interest in the property." *Smith* v. *Bell*, Tenn. Ch. Rep., Cooper's ed., 302. Lord Langsdale has thus defined the degree of certainty required to create a valid trust: "Any words by which it is expressed or from which it may be implied that the first taker may apply any part of the subject to his own use, are held to prevent the subject from being certain. And in another case, it is said that to create a trust by means of an obligation imposed upon the conscience of the devisee, the words must be imperative, the subject must be certain, and the object as certain as the subject." II. Redfield on Wills, p. 409. "Where there is a choice, it must be in the power of the devisee to dispose of it either way. The words did not clearly demonstrate an object, and it was held not to be a trust." II. Sugden on Powers, p. 157. "It appears, then, that the trust and the power are inconsistent, antag-

onistic; they cannot, therefore, coexist; the power as the dominant creation must overrule the trust." *Bratton* v. *Massey*, 15 S. C., 277. So that, in any view that may be taken of the case, I am clearly of the opinion that the property in question was, and is, subject to the debts and liabilities of E. H. Dowling, and was, and is, liable to sale for the payment of the same. Having reached this conclusion, I am satisfied that the plaintiff is entitled to judgment and such relief as is consistent with the findings hereinbefore announced. The plaintiff, the Bank of Charleston National Banking Association, as appears from the evidence, purchased said premises at execution sale, under its judgment, complied with the terms of sale, and received the sheriff's deed to the property. It also appears that the present action was commenced before the plaintiff obtained the conveyance from the sheriff. As soon, however, as the plaintiff, the Bank of Charleston National Banking Association, received the conveyance from the sheriff, the legal title of E. H. Dowling, the judgment debtor, which, as I have found, was then in him, was divested, and the plaintiff, the Bank of Charleston National Banking Association, acquired his rights, and became entitled to the property and its possession. Now, while it is true that the plaintiff could not maintain an action for ejectment against E. H. Dowling until it obtained the sheriff's deed, and thereby acquired the legal title, yet, it seems to me, where all the parties are before the Court, and there is no doubt as to the facts, that the court of equity has the power to render such judgment as will fix and protect the rights of all parties, and not compel the plaintiff, the Bank of Charleston National Banking Association, to resort to another action to obtain that to which it is clearly entitled, and which, as I think, the court of equity may award in the present action. Under all the circumstances, it seems to me that the plaintiff, the Bank of Charleston National Banking Association, is entitled to the possession of the property, and that the Court should award it in this action. Of course, the plaintiff, the Bank

of Charleston National Banking Association, must take the property subject to the homestead rights of E. H. Dowling, to which I have held he is entitled. * * *

From this decree the defendants appeal on following exceptions:

First. As to the deed of Sheriff Lancaster to the plaintiff, the Bank of Charleston, and the alleged legal title of the said plaintiff arising out of said deed, it is respectfully submitted that his Honor erred in finding: 1. That the plaintiff could avail itself of said legal title in this action; whereas, the Supreme Court of this State, in 45 S. C., 677, have decided that it could not, for the reason the deed was delivered after the commencement of this action, and the said finding of his Honor, the presiding Judge, is contrary to the principles of said decision. 2. That the execution and levy under which the sale upon which said deed was based was regular, and that the land sold was duly levied upon; whereas there is no legal proof going to show that any levy was ever made upon the land before the sale, and consequently he should have held that the sale was void. 3. That said deed was valid; whereas he should have found that the sheriff had no power or right to sell said lands until the homestead of the defendant, E. H. Dowling, was set off therein, and, as the question of homestead had not been settled, the sale was void. 4. That the plaintiff, the Bank of Charleston, was entitled to have possession of the land described in the complaint in this action in any way whatsoever.

Second. That as to the homestead exemption of the defendant, E. H. Dowling, it is submitted that his Honor, the presiding Judge, erred in decreeing and finding: That the homestead that was set off by the three appraisers should be set aside and a new homestead assigned to the said defendants, for the reason that said question was never before his Honor nor included in the pleadings in this case, and introduced merely as evidence as an attack on the title of

the plaintiff; and for the further reason that the exceptions to said homestead question are pending on the law side of the Court, and have never been heard, and his Honor had no jurisdiction in the premises to pass upon that question; and, further, if he undertook to determine that question, he should have found, as it is respectfully submitted, that said appraisement and set off of homestead should be confirmed.

Third. That as to the deed of the defendant, E. H. Dowling, to his brothers, J. C. and C. T. Dowling, of 1,800 acres of land, the subject of the action, said deed, dated the 24th of November, 1874, it is respectfelly submitted that his Honor, the presiding Judge, erred in decreeing and finding as to the same that said deed was fraudulent, null, and void; that at the time of its making the grantor and grantees contemplated a fraud upon the creditors of E. H. Dowling; that E. H. Dowling then had creditors or was then insolvent, either him or his two brothers, or that Wroten & Dowling were then insolvent; that there were badges of fraud connected with said deed, and that E. H. Dowling held possession of the same after the execution of the deed. Whereas his Honor should have found, as it is respectfully submitted, that said deed was not called in question either in the pleadings or in the proofs in the case; that there was no testimony assailing said deed in any way; that fraud is never presumed, but must be clearly proved; that at the time of the making of said deed the testimony is, that said E. H. Dowling had no creditors to be affected by said deed; that there is no testimony going to show that E. H. Dowling or his two brothers, or Wroton & Dowling, were insolvent; that there are no badges of fraud in connection with said deed, nor that E. H. Dowling held possession of said land after the execution of said deed.

Fourth. It is submitted that his Honor erred in finding that the First National Bank of Charleston has been, by order of the Court, made a party plaintiff in this proceeding, or in any way finding that the judgment of said First National Bank of Charleston is valid as a lien upon the prop-

erty in question, the same being null and void upon its face; and his Honor further erred in not finding, as to the judgment of the county of Barnwell, that the same was paid and discharged.

Fifth. It is submitted that his Honor erred in finding that the defendants, E. H. Dowling and John C. Dowling, were insolvent since the 1st day of January, 1875, and also erred in finding that John C. Dowling and C. T. Dowling surrendered possession of the tract of land described in the complaint and known as the mortgaged premises, after condition broken, to E. H. Dowling, with the express understanding that it was in full satisfaction of the mortgage debt; whereas he should have found to the contrary, that it was known to said C. T. Dowling, as testified by him, and also known to John C. Dowling, at the time that they went out of possession of the land in question, that the mortgage in question was the property of Mrs. Rebecca A. Barr, and that they could not get possession of said mortgage; and, further, he should have found that the possession of the premises, the mortgagors being out of possession, was taken in charge by the defendant, E. H. Dowling, as the agent of the then mortgagees, Mrs. Rebecca A. Barr and Mrs. V. S. Dowling, and that according to law, which is recognized by the Circuit Judge, the legal title to the premises passed into Mrs. Rebecca A. Barr and Mrs. V. S. Dowling.

Sixth. That his Honor erred, it is submitted, in rejecting the testimony of the defendant, E. H. Dowling, as to the manner in which he took possession of the property in question, as agent of Mrs. Rebecca A. Barr and his wife, for the reason that he was in no way estopped by his answer not stating when and by whom possession was delivered to his wife, V. S. Dowling; and for the further reason that the answer of the minor defendants was before his Honor, and upon that answer alone such testimony is competent.

Seventh. That his Honor erred, it is submitted, in finding that the rental value of the land in question was from $75 to $100 per farm, and that there were sixteen one-horse

farms upon the tract of land in question; and in also finding that Mrs. Barr had to account for the rental value of the property during the period that she was in possession thereof; and that P. C. Spann had so to account, and that the mortgrge held by them was satisfied thereby; for the reason that said parties did not enter into possession of said land with any understanding that they were so to apply said rents and profits, or that they are in law bound so to apply said rents and profits, as to the creditors of E. H. Dowling who, as such, were not entitled to such application. It is also submitted that his Honor erred in finding anything as to an accounting of the rents and profits; that no such accounting was contemplated in the proceedings; none has ever been ordered, and no testimony responsive to the same has ever been taken.

Eighth. As to the transfer of the mortgage given by C. T. and J. C. Dowling to E. H. Dowling, and assigned by said E. H. Dowling, on March 15th, 1876, to Mrs. Rebecca A. Barr, it is submitted that his Honor erred in finding: 1. That said transfer was fraudulent, null, and void, and given and accepted with the intention of delaying, hindering, and defeating the creditors of E. H. Dowling, who transferred the same; whereas his Honor should have found, as sustained by the uncontradicted testimony (he having found that the said transfer was for a square, honest debt), that same was given by E. H. Dowling to his sister as an honest preference of a debtor to a creditor, without any intention on the part of the debtor to hinder or delay his creditors, and without any knowledge on the part of Mrs. Barr of any such intention on the part of her brother; and he should have further found that the understanding between Mrs. Barr and Dr. Dowling was that she was first to be paid her debt out of the mortgage, and then if there was anything left it was to go to his wife, V. S. Dowling, the assignment being not in proportion of one-half to each, but as aforesaid; and should have found that all of the debt of E. H. Dowling to Mrs. Barr was due and unpaid. 2. That the

date of the transfer was at some time subsequent to the 15th of March, 1876; whereas he should have found, by the unquestioned evidence, that the bond and the mortgage was actually delivered, for valuable consideration, to Mrs. Barr, in December, 1875, and that the written transfer was made actually on March 15th, 1876, and at no other time; and he should have further found that at said time of said transfer there were no creditors against the defendant, E. H. Dowling, not even the cause of action of the plaintiff, the Bank of Charleston, in this suit; and he should have further found that although the defendant, E. H. Dowling, had signed a bond to the State of South Carolina for his brother, J. C. Dowling, as treasurer, yet no liability arose on said bond, and that the judgment recovered by the State against J. C. Dowling and his sureties was upon his subsequent bond. 3. That his Honor erred in finding that when the confession of judgment was made from E. H. Dowling to Rebecca A. Barr, it was made for a greater amount than was due.

Ninth. That it is submitted that his Honor should have found, as a matter of law and fact, that the transfer of the mortgage in question from E. H. Dowling to Rebecca A. Barr and V. S. Dowling was made when the defendant, E. H. Dowling, was solvent and had no creditors, as far as the testimony in the case is concerned; that it was honest, good, and valid, and that, though given as a security for the debt of Mrs. Barr, and the balance as a gift to his wife, it vested, when the debt to Mrs. Barr was not paid, the title of the mortgage in Mrs. Barr and Mrs. Dowling as mortgagees; and that when the mortgagors, C. T. and J. C. Dowling, went out of possession in December, 1877, the fee of the land in question at common law passed into said mortgagees, and that at that time Rebecca A. Barr and V. S. Dowling became the legal owners of the property.

Tenth. It is submitted that his Honor erred in finding that there was no consideration for the transfer of the mortgage in question from Rebecca A. Barr to P. C. Spann, and that said transfer was a part of a scheme to delay, hinder,

and defeat the creditors of E. H. Dowling, for the reason that there is no testimony to show that any such intention existed; and that, even if it did exist on the part of E. H. Dowling and P. C. Spann, there was no participation in or knowledge of it by Mrs. Rebecca A. Barr; and that, in this connection, his Honor distinctly erred, in stating what was the consideration of said transfer, in entirely omitting the truth that a part of the consideration was an undivided one-half interest in the 1,000 acres of land upon which stood the Steadman mill.

Eleventh. That his Honor erred in finding that the sale of the Mike Barr property from E. H. Dowling to P. C. Spann was without consideration; whereas the testimony shows beyond question that $3,000 was paid therefor, and that P. C. Spann was a man of means at the time of the transfer.

Twelfth. That it is submitted that his Honor erred in stating it as law that, in transactions between relatives, "the burden is placed upon them to satisfactorily explain the transaction charged with fraud;" whereas it is submitted that the law is, that whilst a less degree of proof is required in matters between relatives than outsiders, yet it is the law, in all cases of fraud, to prove the fraud to the satisfaction of the Court; and not only to prove the fraudulent intent of the grantor, but the co-operation and knowledge of the grantee with the grantor in the fraudulent transaction; and if this be not proven, the fraud is not established.

Thirteenth. It is submitted that his Honor erred in finding that the transfer of the papers in question by P. C. Spann to his sister, V. S. Dowling, was null and void, on the ground that there was no consideration between the parties, and that the same was a part of a scheme to rob the creditors of E. H. Dowling; whereas it is submitted that he should have found, upon the testimony and the greater weight of the testimony, that said consideration was full, and that said transfer was honest and without taint of fraud.

Fourteenth. It is submitted that his Honor, having found the fact that there was a deed from the defendant, J. C. Dowling, to V. S. Dowling, shortly before her death, covering his half interest (if he had any at that time) in the land in question, erred in finding that said deed was null and void; and he should have held that said deed was valid, and was a conveyance of a mortgagor to a mortgagee of a half interest in the property, and that the fee of the half interest was vested in her thereby. And it is respectfully submitted that the least his Honor could have held in this action was that Mrs. V. S. Dowling was the owner of a half interest in this property, having the deed therefor of J. C. Dowling, and that said interest passed to her estate, and that the other half interest in said property was covered by the mortgage—that is to say, the interest of Mrs. Rebecca A. Barr in said mortgage, which had been transferred from her to P. C. Spann, and by P. C. Spann to V. S. Dowling, and that the same was held by the estate of V. S. Dowling; and that said debt so transferred was a valid and binding lien on the property as to the half interest thereof prior to any claim of any judgment creditor of the defendant, E. H. Dowling.

Fifteenth. It is submitted that his Honor erred in construing the will of the testatrix, Virginia Spann Dowling, as he did, and in decreeing that the same vested in E. H. Dowling, a levyable fee in the land in question; whereas he should have found that said will simply created the defendant, E. H. Dowling, his executor and trustee under the said will, and that the fee in the property covered by said will vested in him as such executor in trust for the use and benefit and behoof of the minor children of said testatrix, with power to sell the same, and to reinvest the proceeds subject to like limitations and trusts.

Sixteenth. It is submitted that his Honor erred in passing upon the question of the strict statute of limitations, which was meant to apply to the legal title of the plaintiff, inasmuch as said legal title was not to be considered by the

Court in this action, according to the previous decision of the Supreme Court; and it is further submitted that his Honor erred in not dismissing the equitable cause of action of the plaintiff set up in the complaint, and the evidence, on the ground that same was a stale claim and was barred in equity by laches and a lapse of time.

Seventeenth. It is submitted that his Honor erred in not decreeing that the complaint should be dismissed with costs, for the reason the testimony in the case clearly showed that the plaintiff was not entitled to any relief whatsoever, either legal or equitable.

*Messrs. Bates & Simms,* for appellant.

*Messrs. Henderson Bros.,* also for appellant, cite: *Error to grant legal relief:* 45 S. C., 677; 14 S. C., 434; 47 S. C., 203. *No proof of levy:* 23 S. C., 96; 14 S. C., 480. *Sale without assigning homestead is void:* 26 S. C., 1; 29 S. C., 175; 32 S. C., 264; 47 S. C., 137. *Deed in question not proven to have been executed to delay and defraud creditors:* 37 S. C., 373; 47 S. C., 100. *Mortgagee in possession only chargeable with rents and profits received:* 47 S. C., 582; 42 S. C., 536; 14 S. C., 292; 16 S. C., 470. *Mortgage may be assigned orally by mere delivery:* Vor. Code, 93; 20 S. C., 139; 4 S. C., 257; 38 S. C., 457; 12 S. C., 167. *Subsequent creditors cannot attack voluntary transfer except for fraud:* 22 S. C., 528; 28 S. C., 111. *Claim of plaintiff barred by laches:* 22 S. C., 41; 24 S. C., 99; 16 Ves., 254; Harp. Eq., 271; 2 Strob. Eq., 27.

*Mr. Robert Aldrich,* also for appellant, cites: *As to construction of will:* 1 N. & McC., 71; 2 McC., 66; 16 S. C., 507; Fable *v.* Brown, 2 Hill Eq.; Buist v. Dawes, 4 Rich. Eq.; Carr *v.* Porter, 1 McM.; Smith v. Poyas, 1 DeS; 10 Johnson, 505; 4 Rich. Eq., 475; 4 T. R., 38; 7 Ves., 567.

*Mr. S. G. Mayfield,* contra, cites: *Rule as to findings of fact below:* 45 S. C., 303; Con. 1895, art. 5, sec. 4; 47 S. C., 347. *Defendant will not be permitted to deny statement in*

*verified answer:* 44 S. C., 1; 30 S. C., 564; 38 S. C., 504; 23 S. C., 401; 40 S. C., 255; 18 S. C., 606; 28 Mo., 346. *If mortgage assigned as collateral and gift, assignee takes thereby no legal title to land:* 15 S. C., 170. *Conveyance to hinder, delay, and defeat creditors is void:* 1 Hill, 22, 382; 27 S. C., 97. *Court granted proper relief:* 27 S. C., 97; 45 S. C., 683; 41 N. Y., 107. *Construction of will:* 4 Rich. Eq., 476; 18 S. C., 184; B. Mun., 242; 52 Gratt., 257; 16 S. C., 557; 27 S. C., 514; 15 S. C., 277; 97 N. Y., 421.

*Messrs. Izlar Bros.*, also contra, cite: *As to construction of will:* 13 Am. R., 23; 16 John., 537; 19 N. H., 85; 1 Salk., 229; L. R., 10 Eq. Cas., 267; L. R., 14 Eq. Cas., 49; 6 Jurist N. S., 1360; L. R., 8 Ch. Div., 540; 25 Miss., 440; 10 S. C., 82; 28 Am. Rep., 2; 15 S. C., 442; 38 N. J. Eq., 430; 32 Gratt., 357; Tenn. Ch. R., Cooper's ed., 302; 15 S. C., 277.

April 19, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This action was commenced some time in February, 1894, for the double purpose of recovering possession of a tract of land in Barnwell County, containing 1,800 acres, more or less, more particularly described in the complaint, and also for the purpose of having certain transactions referred to in the complaint declared fraudulent and void, and that the same be cancelled, as clouds upon the plaintiff's title. The case was first heard by his Honor, Judge Witherspoon, who rendered a decree dismissing the complaint upon the sole ground that, though it appeared that plaintiff had bid off the land at sheriff's sale before the commencement of this action, yet, as no title was made to the plaintiff until after the commencement of the action, the same could not be maintained as an action at law for the recovery of the possession of real estate; and "as the relief sought in equity was subsidiary to and dependent upon plaintiff's having the sheriff's deed at the commencement of plaintiff's action, I further conclude, as the legal action cannot be maintained, it would be useless and improper, at this

time, to consider and pass upon either the legal or equitable issues raised by the pleadings." From that judgment plaintiff appealed, and the case as reported in 45 S. C., 677, shows that this Court held that while Judge Witherspoon was right in holding that the action could not be maintained as an action at law for the recovery of real estate, for the reason that plaintiff had not obtained legal title when the action was commenced, yet that there was error in not considering and determining the equitable issues presented by the pleadings. In delivering the opinion of this Court in that appeal, Mr. Justice Gary uses this language: "The complaint seeks both legal and equitable relief. Even if all the allegations as to the ownership of the land by the plaintiff should be struck out of the complaint, the allegations would still remain that the plaintiffs are judgment creditors of J. C. and E. H. Dowling; that the said E. H. Dowling was insolvent, and that the different transactions mentioned in the complaint constituted a fraud upon the rights of creditors;" and after citing the authorities in support of the view taken, he proceeds to say, "The case of *Wagener* v. *Mars*, 27 S. C., 97, shows that the creditor can have complete relief on the equity side of the Court, if the transactions mentioned in the complaint should be declared fraudulent, by having the lands sold under a decree in this case, and the proceeds applied to the payment of the debts of the judgment creditors." Accordingly the case was remanded to the Circuit Court for the purpose of hearing and determining the equitable issues presented by the pleadings, and it has there been heard by his Honor, Judge Townsend, who rendered the decree set out in the "Case." From that judgment the defendants appeal upon the several grounds stated in the record, which decree, with the grounds of appeal, will be embodied in the report of this case.

Many of these grounds of appeal present questions of fact, and while we may not be prepared to indorse some of the minor and incidental conclusions of fact found by the Circuit Judge, yet, after a careful examina-

tion of all the testimony, we must say that his conclusions as to the material issues of fact are supported by the preponderance of the evidence, and should, therefore, be affirmed. It is neither usual nor would it be profitable to enter into any detailed consideration of the various questions of fact presented, and we do not propose to do so on this occasion. There are certain undisputed facts which prepare the mind to accept the conclusions of fact reached by the Circuit Judge. E. H. Dowling seems to have been a large and prosperous planter; but desiring to change his business and become a factor and commission merchant in the city of Charleston, in copartnership with one Wroton, he sells, in November, 1874, his entire planting interest— land, stock, farming implements, and provisions on hand— to his two brothers, J. C. Dowling and C. T. Dowling, for the sum of $16,000. This sum, together with the money which he put into the business of Wroton & Dowling, which seems to have been a very considerable amount, was more than double enough to pay every debt which he then owed, so far as the evidence discloses. Having thus sold out all his property in Barnwell County, he removed to the city of Charleston in the early part of the year 1875, where he engaged in the factorage and commission business, as a partner in the firm of Wroton & Dowling. He seems very soon to have found that the business was not a paying business, and some time in the year 1875 he drew out of the firm the sum of $1,200—all he could get—and invested it in real estate in Lexington County; and in December, 1875, he removed to Lexington County, where he remained until December, 1877, when he returned to Barnwell, and took possession of the land which he had sold to his two brothers in November, 1874—where he still lives. It seems that, though E. H. Dowling conveyed the land in question to his two brothers on the 24th of November, 1874, no part of the purchase money was paid in cash, and no note, bond or other paper was then taken to secure the payment thereof; but on the 13th of March, 1875, J. C. and C. T. Dowling

did execute their bond and mortgage to E. H. Dowling for the sum of $16,000, the purchase money of the land; and that in December, 1877, finding themselves unable to pay the mortgage debt, desired to surrender, and did surrender, the possession of the mortgaged premises, in satisfaction of the balance due on the mortgage debt, only a small portion thereof having been paid. There is no doubt that the possession was in fact surrendered to E. H. Dowling, but there is dispute as to the capacity in which he took possession— the plaintiff contending that he went into possession as mortgagee, while the defendants contend that he took possession as agent of the parties to whom they claim that E. H. Dowling had previously assigned the mortgage. It also appears that J. C. Dowling, at some time, exactly when does not appear, made a deed to Mrs. Virginia Spann Dowling, the wife of E. H. Dowling, for his interest in the 1,800 acres of land which he and his brother, C. T. Dowling, had bought from E. H. Dowling. There is no pretense that there was any money consideration for this deed, but the claim is, that it was made to perfect the title of Mrs. Dowling, which, it is alleged, she had acquired by reason of the surrender of the possession of the land by the mortgagors in December, 1877. So that when the plaintiff, as a judgment creditor of E. H. Dowling, undertook to enforce its judgment by a levy and sale of the land found in the possession of E. H. Dowling, the creditor is met with a claim that E. H. Dowling is not the owner of the land, but that the title thereto had become vested in his wife by a series of transactions, which will presently be alluded to, and that he is in possession as executor of his wife, who had died in 1887, leaving a will of which he was the qualified executor. These transactions, by which E. H. Dowling claims that the title had become vested in his wife, may be briefly stated as follows: 1st. That some time in December, 1875, E. H. Dowling delivered to his sister, Mrs. R. A. Barr (now Mrs. Warren), the bond and mortgage to secure the payment of $16,000, the purchase money of the land in question, which

he had conveyed to his two brothers, J. C. and C. T. Dowling, in November, 1874, for the purpose of securing the payment of an old debt—a large portion of which originated as far back as 1869—to his sister, Mrs. Barr. 2d. That on the 15th of March, 1876, E. H. Dowling made the following indorsement on the mortgage: "I hereby transfer the within bond and mortgage to R. A. Barr and V. S. Dowling." 3d. That on the 31st of January, 1880, the following assignment was indorsed upon the mortgage, which was signed only by Mrs. R. A. Barr: "For value, I do hereby assign the within mortgage to P. C. Spann, and others." It appears that said P. C. Spann was the brother of E. H. Dowling's wife, but who the "others" were, does not appear. 4th. That on the 22d of October, 1885, the said P. C. Spann indorsed upon the mortgage, a formal assignment thereof to Mrs. Virginia Spann Dowling, the wife of E. H. Dowling, and on the same day the said P. C. Spann, by his writing under seal, indorsed on the mortgage, declared as follows: "Whereas, the within mortgage and the bond thereby secured, assigned, and delivered to R. A. Barr and V. S. Dowling in joint interest, and the said R. A. Barr, the 31st of January, 1880, made indorsement designed to assign only the interest and share of the said R. A. Barr to me, the undersigned assignor, without reference to or affecting the interest or share of the said V. S. Dowling therein, know all men that I, Philip C. Spann, of the said State and county, assignee of the said R. A. Barr, as aforesaid, for value to me paid by Virginia S. Dowling, of the county of Barnwell, in State aforesaid, at and before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, have released, bargained, sold, assigned, and set over unto the said Virginia S. Dowling, her heirs and assigns, the said interest and share in and to the within mortgage, and unto the said Virginia S. Dowling, her heirs and assigns, do quit claim unto all the mortgaged premises therein mentioned and described, together with the rights, members, and appurtenances thereto belonging, and all my estate, right, title,

and interest therein; to have and to hold all and singular, the premises granted and assigned or mentioned or intended, unto the said Virginia S. Dowling, her heirs and assigns forever, free and released from all claim and demand, by reason of any assignment aforesaid, and subject only to the right and equity of redemption of the within named mortgagors." It would thus appear that E. H. Dowling, in but a little more than a year after he had sold a valuable plantation, with the stock and farming implements and the provisions thereon, for the sum of $16,000, had managed to strip himself of every vestige of his property, except the money which he drew out of the concern of Wroton & Dowling when he found it was not a paying business, and which he doubtless knew was then in a failing condition, as a disastrous failure soon followed, which money he invested in real estate in Lexington, afterwards conveyed to his brother in law, P. C. Spann, and by him used in satisfying the debt of E. H. Dowling to his sister, Mrs. Barr; and by the transactions above mentioned between persons connected with him by the closest family ties, had managed to vest the title to the most valuable part of his estate in his wife. Such a condition of things very naturally invites the closest scrutiny, and that satisfies us that the Circuit Judge was not in error in concluding that these manipulations of the mortgage were with a view to hinder, delay, and defeat the creditors of E. H. Dowling, and cannot be allowed to stand. Without undertaking to travel over the ground occupied by the Circuit Judge, it seems to us there are several circumstances which tend to support the conclusion indicated by the several remarks which dropped from E. H. Dowling in the course of his examination, which are mentioned in the Circuit decree, that the real purpose of these various transfers of the mortgage was to save something from the wreck of E. H. Dowling's affairs for the benefit of his wife. It is a little strange that in December, 1875, E. H. Dowling should have suddenly waked up to the necessity of securing this old debt to his sister, which had been running for sev-

eral years, at a high rate of interest—one per cent. per
month—upon which nothing had been paid, so far as the
testimony discloses, during the years when E. H. Dowling
seems to have been carrying on a successful planting busi-
ness.   Again, it is difficult to understand why E. H. Dow-
ling should, in about four months after he claims to have
delivered the bond and mortgage to his sister, Mrs. Barr, as
a pledge to secure the payment of the debt due to her, have
undertaken to indorse on the mortgage a formal assignment
thereof to Mrs. Barr *and V. S. Dowling*, his own wife, who
does not appear to have paid any consideration for such as-
signment.   True, E. H. Dowling undertakes to explain this
by saying that the intention of the assignment was that his
wife was to have as a gift from him only what remained
after the debt to Mrs. Barr was satisfied.   But this is in-
consistent with the explanation which P. C. Spann un-
dertakes to give of this transaction in the indorsement
which he made on the mortgage, copied above.

Again, the testimony raises the gravest doubt, to say the
very least of it, whether the bond and mortgage were deliv-
ered to Mrs. Barr as early as December, 1875, and whether
the assignment of the mortgage by E. H. Dowling to Mrs.
Barr and Mrs. V. S. Dowling bears its true date.   For the
testimony both of Mrs. Barr and of E. H. Dowling is to the
effect that after the bond and mortgage were delivered to
Mrs. Barr, they remained in her possession until she as-
signed them to P. C. Spann, on the 31st of January, 1880;
and yet there are two credits indorsed upon the bond by E.
H. Dowling, one bearing date 20th December, 1875, and
the other dated 25th of February, 1877—which the testi-
mony shows should be 1878.   This shows that these papers
must have been in the possession of E. H. Dowling as late
as February, 1878, when E. H. Dowling, in his own name
and not as agent for another, indorsed that credit.   So that
the last of these credits certainly, and possibly the first, were
made after the bond and mortgage purports to have been
assigned to Mrs. Barr and Mrs. Dowling; and by what right

E. H. Dowling undertook to receive money on a bond, which he now claims did not then belong to him, is nowhere explained. Furthermore, the other two credits indorsed on the bond, the one in 1886 and the other in 1889, are signed— the former by "V. S. Dowling, per E. H. Dowling," and the other "E. H. D., Exr."—showing that E. H. Dowling knew how to indorse credits after the bond had passed out of his hands, as he claimed. We must, therefore, agree with the Circuit Judge, that the weight of the testimony shows that E. H. Dowling never undertook to transfer the bond and mortgage until after he became insolvent, and after his creditors began to press him with suits, and seeing ruin staring him in the face, he resorted to every possible expedient to save something for his wife from the wreck of his affairs. His own testimony displays a singular—indeed, we may say an extraordinary—forgetfulness of matters of which a person of ordinary intelligence, in his condition, would be expected to retain a lively recollection, even if he did not keep memoranda which would enable him to make a full explanation of these matters, which would naturally excite inquiry.

Counsel for appellants contend that the claim of the plaintiff is stale, and that the plaintiff is barred by laches. This contention cannot be sustained, for the reason that it is alleged in the plaintiff's complaint that it had no knowledge of the various matters constituting the fraud until the notice given at the sheriff's sale by the attorneys of E. H. Dowling, and this was but a very short time before the present action was commenced, and there is no evidence that either the plaintiff on the original record, or the First National Bank of Charleston, or the State of South Carolina, who have, by order of the Court, been permitted to come in as parties plaintiff, ever had any notice of the assignments of the mortgage, or of any of the matters constituting the fraud complained of, until a very short time before the commencement of this action. The rule as laid down in the case of *Shannon* v. *White*, 6 Rich. Eq., 96,

recognized in the recent case of *Harrell* v. *Kea*, 37 S. C.,
369, is that where an action is brought to set aside a deed
or other paper for fraud, the plaintiff, to avoid the plea of
the statute of limitations, should allege that the fraud was
discovered within the statutory period, but the *onus* of
showing want of notice is not on the plaintiff, for it is in-
cumbent on the defendant to sustain his plea of the statute,
to show that plaintiff had notice more than six years before
the commencement of the action. The same rule, upon
principle, applies to the defense of laches.

But, even if it could be held that the Circuit Judge erred
in holding that the various transactions by which it is
claimed that the title to the land in question became vested
in Mrs. Virginia Spann Dowling were void for fraud,
we still think that, under a proper construction of
the will of Mrs. Dowling, E. H. Dowling took an
absolute estate in the land, and that it is liable to the claims
of his creditors. The will is set forth in full in the decree
of the Circuit Judge and, therefore, its provisions need not
be copied here. It was made, as we think the testimony
shows, at the instance and under the suggestion of E. H.
Dowling, and its purpose manifestly was, that while giving
to E. H. Dowling absolute dominion over the property, with
the exclusive right to its beneficial use, under the guise of
a so-called trust in favor of the children, it was to be pro-
tected from the claims of his creditors. By the terms of the
will, all the property of the testatrix of every kind and de-
scription whatsoever, is given to "the said Elijah H. Dow-
ling, and his successor or successors by his last will and
testament to be nominated and appointed, to and upon the
trust that the whole and every parcel and portion thereof
shall be, during the lifetime and capacity of the said Elijah
H. Dowling, managed, controlled, exchanged, sold or other-
wise disposed of at and by the discretion of the said Elijah
H. Dowling, and without accountability therefor, and in
accordance with any testamentary directions of the said
Elijah H. Dowling to the use, benefit, and behoof of my

children * * * during their minority respectively, and to
be equally distributed unto and among them, share and share
alike, to them and their heirs; and it is directed that parti-
tion and allotment shall be, in all respects, subject to the
discretion of my executor hereinafter named, and during his
lifetime and capacity may be by him made; but thereafter,
when the oldest of the said children surviving shall attain
the age of twenty-one years, the same shall be made and
effected by three or more family friends, to be by the said
successor or successors selected, and under his or their hand
or hands, seal or seals, to that end and purpose duly ap-
pointed and authorized.   And I do hereby nominate, con-
stitute, and appoint my husband, the said Elijah H. Dow-
ling, executor of this my will." It seems to us that the
first and disposing part of the will is couched in such terms
as to entirely defeat and annul the subsequent attempt to
create a trust in favor of the children.   The property is
given to Elijah Dowling, and to such person or persons as
he may appoint by his will, to be by him "managed, con-
trolled, exchanged, sold or otherwise disposed of at and by
the discretion of the said Elijah H. Dowling, *and without
accountability therefor.*"   There is no provision, as is usual
if not universal in such cases, that the proceeds of the pro-
perty if sold, or that any property for which it may be ex-
changed, shall be held subject to any trust; but he may sell
it, *without accountability* for the proceeds, he may exchange
it for other property for which he cannot be called upon to
account; indeed, he may give it away if he chooses, for he
is invested with power not only to sell or exchange the prop-
erty, but may, in his discretion, *otherwise* dispose of it, and
cannot be called to account for so doing.   In fact, he is in-
vested with every right and power which the *absolute* owner
can have; for he has absolute power to manage and control
the property, and absolute power to sell, exchange or other-
wise dispose of it, "*without accountability therefor,*" and an
absolute owner can have nothing more.   As has been well
said in one of the cases cited: "absolute dominion is one of

24—52

the best descriptions of absolute property." These views are fully supported by the authorities cited by the Circuit Judge in his decree, and by counsel for respondent in the argument here, and we need not discuss the matter further.

We are, therefore, of opinion that the property in question is the absolute property of the defendant, E. H. Dowling, and can be subjected to the payment of his debts. We cannot concur, however, in so much of the judgment of the Circuit Court as directs the sheriff to put the plaintiff bank in possession of so much of the land in question as is not embraced in the homestead of the defendant, E. H. Dowling; for it is adjudged, under the former appeal in this case, that the plaintiff is not entitled to recover possession of the land *in the present action*, for the reason stated in the former appeal. In addition to this, inasmuch as the homestead laws require the sheriff, "before selling" the real estate of the judgment debtor, who is the head of a family, shall have the homestead laid off, and expressly forbids him, under a penalty, from so doing, it seems to us best, under the circumstances of this case, that the sale heretofore made by the sheriff should be set aside, and his deed to the plaintiff bank be cancelled, and that the land be sold under an order in this case, as indicated by Mr. Justice Gary in his opinion in the former appeal. But, inasmuch as it is conceded that the defendant, E. H. Dowling, is entitled to a homestead in this land, no sale should be ordered until such homestead is duly assigned, and then the remainder of the land should be ordered to be sold, and the proceeds applied first to the payment of the costs and expenses of these proceedings and of the sale, and then to the judgments in the order of priority.

It was said at the hearing that the proceedings to lay off the homestead of the judgment debtor, which seem to have been commenced, are still pending. If this be so, then such proceedings should be carried through; otherwise, proper proceedings should be taken to lay off the homestead.

The judgment of this Court is, that the judgment of the Circuit Court, except as modified herein, be affirmed, and

that the case be remanded to that Court for the purpose of there formulating a judgment in accordance with the views herein announced.