BESSIE M. BRAINARD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.*

Docket No. 108220. Promulgated October 27, 1942.

*Clarence H. Klinger, Esq.,* for the petitioner.
*Lawrence Bloomenthal, Esq.,* for the respondent.

OPINION.

HILL: This proceeding involves a deficiency of $1,554.92 in estate tax. Liability has been determined against the petitioner as transferee of the assets of the estate of James W. Brainard, who died March 28, 1937. The first issue which we must decide is whether or not respondent may determine a deficiency against this petitioner in view of the fact that he did not determine a deficiency against the estate of James W. Brainard within one year from the date of a request by the executors of that estate for prompt assessment pursuant to section 313 (b) of the Revenue Act of 1926.[1] Section 313 (b) provides as follows:

(b) If the executor makes written application to the Commissioner for determination of the amount of the tax and discharge from personal liability

---

* Prior to October 22, 1942, this report was approved for promulgation.
[1] Mistakenly set forth as Revenue Act of 1936 in the stipulation of facts.

therefor, the Commissioner (as soon as possible, and in any event within one year after the making of such application, or, if the application is made before the return is filed, then within one year after the return is filed, but not after the expiration of the period prescribed for the assessment of the tax in section 310) shall notify the executor of the amount of the tax. The executor, upon payment of the amount of which he is notified, shall be discharged from personal liability for any deficiency in tax thereafter found to be due and shall be entitled to a receipt or writing showing such discharge.

If the determination of a deficiency is not barred, then a second issue is raised, that is, what was the value of certain stock contained in the gross estate of the decedent? In evaluating that stock respondent included as an underlying asset thereof certain property which petitioner claims had been given to her prior to decedent's death.

The facts were all stipulated and as stipulated are adopted as our findings of fact. Only those necessary to an understanding of the issues are set forth herein.

Petitioner is an individual, residing at 12491 Cedar Road, Cleveland, Ohio. She is the widow of James W. Brainard, hereinafter referred to as the decedent.

On or about July 28, 1938, the executors of the estate filed an estate tax return with the collector of internal revenue for the twenty-first district of New York and paid a tax of $23,248.48, exclusive of interest.

By letter dated July 26, 1938, the executors of the estate requested the respondent to make an early determination of the estate's tax liability in accordance with the provisions of section 313 (b), *supra.*

On or about October 4, 1939, a decree was duly made and entered in the Surrogate's Court of Jefferson County, Watertown, New York, determining and settling the accounts of the executors and discharging them. All funds and assets of the estate were administered and distributed by the executors prior to May 5, 1941.

On May 5, 1941, the respondent issued notices of deficiency to the executors of the estate, and to the petitioner as transferee. The deficiency has not been paid and no appeal to the Board has been made by the estate.

The issue raised on these facts is whether or not the respondent could determine a deficiency after the year period specified in section 313 (b), *supra.* The express wording of the statute releases the executor "from personal liability for any deficiency in tax thereafter found to be due." The wording is so clear and unambiguous that we can see no reason to construe it. Nothing contained in that section refers to a release of the estate from liability for a later determined deficiency. Thus, although the executors are released from personal liability, there is no provision whatsoever which

would bar the respondent from issuing a notice of deficiency to the estate or to the transferee. Cf. *William B. Weigel et al., Trustees*, 34 B. T. A. 237; affd., 96 Fed. (2d) 387. We hold that a notice of deficiency could be issued to the estate by the respondent even though the year period provided in section 313 (b), *supra*, had elapsed.

Having decided the first issue, we must now consider the question of what value certain stock included in decedent's estate had at the date of his death. The basis of the deficiency herein is an adjustment by respondent of the value of such stock as returned for estate tax purposes. Such value was adjusted by adding thereto the value as determined by respondent of certain property which he held was an underlying asset of the stock. The only question presented is whether that property was such asset at time of decedent's death or whether prior thereto it had been conveyed as a gift to petitioner. It is stipulated that the "property was correctly valued at $13,219." There is no issue as to the method of the adjustment of value or as to the correctness of the adjusted value of the stock, provided the property in question had not been conveyed as a gift to petitioner prior to decedent's death.

In 1928 decedent purchased certain real and personal property hereinafter referred to as the Henderson Harbor property. In 1931 he organized the Brainard Investment Corporation, an Ohio corporation, and in exchange for all of its authorized no par common stock transferred the Henderson Harbor property to it.

On November 28, 1931, decedent transferred all of the stock of the Ohio corporation to the Brainard Investment Co., Ltd., a personal holding company organized under the laws of Newfoundland. All of the stock of the Newfoundland company, except two qualifying shares, was owned by decedent individually. Title to the Henderson Harbor property remained in the Ohio corporation from the date of its organization until June 30, 1936.

The minutes of a regular meeting of the board of directors of the Newfoundland company held on June 15, 1936, state as follows:

President Brainard further explained to the meeting that Mrs. Bessie M. Brainard was proposing to acquire the real estate at Henderson Harbor and was offering therefor $      and that in his judgment it would be for the best interest of this corporation to convey this property and avoid the responsibility for the upkeep of the same to the corporation. Whereupon Director Steele introduced the following resolution and moved its adoption which motion was seconded by Director Gillmer and unanimously adopted.

RESOLUTION "B"

WHEREAS, this the Brainard Investment Company, Ltd., is the owner of certain lands located in the town of Henderson Harbor, County of Jefferson and State of New York, as described and set out in a deed from William S. Rice

and wife to James W. Brainard, dated October 1, 1928 and in due course by James W. Brainard transferred to this corporation and which Bessie M. Brainard is now proposing to purchase for the sum of $        and

WHEREAS, in the judgment of this the Board of Directors of this corporation, said offer ought to be accepted and said real estate sold to said Bessie M. Brainard on said terms of $        .

Now THEREFORE BE IT RESOLVED that this corporation sell and transfer to Bessie M. Brainard all that certain tract or parcel of land situated in the town of Henderson Harbor, County of Jefferson, State of New York and conveyed by William S. Rice and wife to James W. Brainard as of the 1st day of October, 1928 and in turn conveyed by James W. Brainard to this corporation together with all of the rights, improvements, appurtenances and hereditaments thereunto pertaining and that the officers of this corporation be and hereby are directed to complete said transaction and to deliver to said Bessie M. Brainard a good and sufficient deed of general warranty conveying all of said premises to her the said Bessie M. Brainard in consideration of said sum of $        .

Pursuant to the foregoing resolutions, the Henderson Harbor property was transferred to petitioner by the Ohio corporation. The deed was dated June 30, 1936, and was recorded on September 28, 1936.

On or about June 30, 1936, entries were made on the books of the Newfoundland company setting up an account receivable in the sum of $79,938.11 covering the value of the Henderson Harbor property as shown on the books of the Ohio corporation. That account receivable was carried as an asset of the Newfoundland company on March 28, 1937. On that date the Henderson Harbor property itself was carried as an asset on the books of the Ohio corporation. The deed to petitioner was executed without any valuable consideration to the grantor.

On August 24, 1937, a meeting of the board of directors of the Newfoundland company was held. The minutes state as follows:

THE FOLLOWING RESOLUTION WAS PROPOSED:

Whereas Resolution B as set forth in the minutes of the meeting of the Board of Directors of this Company held June 15th, 1936 purporting to set forth a sale of certain real estate and personal property in said resolution described and,

Whereas pursuant to said resolution B a certain transfer was made and,

Whereas in 1936 this corporation at the request of J. W. Brainard, sole stockholder, did transfer to Bessie M. Brainard, certain real estate known as Rock Ledges, Henderson Harbor, New York, and certain personal property at that time the property of the corporation, and

Whereas at the time of the transfer the sole consideration was natural love and affection, and that said transfer was intended to be and was in fact a gift of said property to said Bessie M. Brainard and,

Whereas there has never existed any promise, express or implied, on the part of said Bessie M. Brainard to pay any valuable consideration in exchange for said property thus transferred and,

Whereas, Notwithstanding said facts there appears on the books of the Company an account receivable in the sum of $79,938.11 purporting to be the consideration to be received by this Company for said property. Said account receivable is the indebtedness owing by said J. W. Brainard, and is not a debt of said Bessie M. Brainard.

Now Therefore, Be It Resolved that said account receivable in the sum of $79,938.11 be stricken from the books as an asset of this Company owing by Bessie M. Brainard, and the corporate books and records corrected, so as to correctly portray this transfer, as herein set forth.

It was moved by M. E. Gillmer that said resolution be adopted. Said motion was duly seconded, and a vote being had was unanimously adopted. Mrs. Bessie M. Brainard not voting.

On motion regularly adopted, meeting adjourned.

Attest:

 MAUD E. GILLMER
  *Secretary.*

     A. F. STEELE, *Vice Pres.*
     BESSIE M. BRAINARD
      *President.*

I hereby certify that the foregoing is a true copy of Resolution passed by the Board of Directors of the Brainard Investment Corporation under date of August 24, 1937.

     MAUD E. GILLMER
      *Secretary.*

On or about December 7, 1937, the Ohio corporation filed a gift tax return for the calendar year 1937 with the collector of internal revenue for the eighteenth district of Ohio showing the gift of the Henderson Harbor property to the petitioner. On that date petitioner also filed a donee's information return with the same collector showing the gift in the same amount as reported by the Ohio corporation.

On January 13, 1937, decedent executed his last will and testament, which stated in part as follows:

ITEM 11

Substantially all of the property which formerly stood in my own name is now owned by Brainard Investment Company Limited, a corporation of New-foundland, all of the outstanding shares of which I own and all of which stand in my name, with the exception of two qualifying directors shares, the certificates for which are endorsed in blank, are in my possession and which I in fact own. Brainard Investment Company Limited owns all of the shares of Brainard Investment Corporation a corporation of the State of Ohio, which owns all of the real estate and household goods which I owned at the time of its incorporation. * * *

The petitioner contends that the Henderson Harbor property was transferred to her by the Newfoundland company as a gift. A corporation will not be presumed to give away its assets. *Noel v. Parrott*, 15 Fed. (2d) 669. Therefore, there must be convincing evidence that a gift was made by the corporation. It is a fundamental requisite of a gift that the donor have a present donative intent in making the transfer. The facts do not support any such intention but rather refute it.

The resolution of June 15, 1936, does not contain words of gift nor show any donative intent on the part of the corporation. The subsequent bookkeeping entries are not consonant with any such intent. At no time prior to decedent's death was the asset account of either corporation adjusted to reflect a decrease in value because of the alleged gift of the Henderson Harbor property to the petitioner. On the contrary, the Newfoundland company's bookkeeping entry of the bills receivable item in the amount of the book value of the property, plus the fact that the Ohio corporation continued to carry the property at such book value as an asset on its books, reflects an increase of the prior asset value of Newfoundland's stock in the amount of the book value of the property. But, since it is stipulated that the deed purporting to convey the property to petitioner was without valuable consideration, it must be conceded that such bills receivable item has no significance as a corporate asset.

In passing we note that the Ohio corporation did not file a gift tax return for the calendar year 1936 on March 15, 1937, as required by section 507 of the Revenue Act of 1932. It did, however, file such return on December 7, 1937, long after the death of decedent and after the meeting of the board of directors of the Newfoundland company on August 24, 1937. These transactions, occurring subsequent to decedent's death, can not relate back to a date prior thereto and thus affect the value of the gross estate of decedent.

Even if we disregard the corporate entities, no intent to make a gift on the part of decedent is shown. The will executed in 1937 negates any such conclusion.

From a consideration of all the material facts and the issues as presented we hold that no gift was intended or made and that respondent's determination of the value of the Newfoundland company stock held by decedent's estate was correct.

*Decision will be entered for respondent.*

