**ESTATE OF Theodore Geddings TARVER, Deceased,**

**The Citizens and Southern National Bank of South Carolina, Executor, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 7623.

United States Court of Appeals Fourth Circuit.

Argued April 17, 1958.

Decided June 2, 1958.

914

Wm. P. Congdon, Augusta, Ga. (Congdon & Leonard, Augusta, Ga., on the brief), for petitioner.

L. W. Post, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and PAUL, District Judge.

SOPER, Circuit Judge.

This case comes before the court on a petition to review a decision of the Tax Court which upheld a determination by the Commissioner of Internal Revenue of a deficiency in federal estate tax in the sum of $55,011.40 against the Citizens and Southern National Bank of South Carolina as executor of the estate of Theodore Geddings Tarver, a resident of North Augusta, South Carolina. The testator died October 8, 1950. His will was probated and the bank was appointed as executor on October 13, 1950. Three questions are presented for decision.

1. Whether the notice of deficiency was valid to charge the estate in view of the fact that it was sent to the executor more than a year after the executor applied to the Commissioner for the determination of the amount of the tax under § 825(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 825(a).

2. Whether the entire corpus of a trust estate created by the decedent by an indenture of April 16, 1936, should be included in the decedent's gross estate for purposes of the federal estate tax under § 811(c) of the Code, 26 U.S.C.A. § 811 (c).

3. Whether a marital deduction should be allowed under § 812(e) (1)

(F), 26 U.S.C.A. § 812(e) (1) (F), with respect to the residuary trust created by the decedent's will.

The facts relating to the second and third questions involved in this appeal and the pertinent provisions of the decedent's will are contained in the following statement:

"On April 16, 1936, the decedent executed an indenture by which he transferred interest-bearing bonds in the face amount of $10,000 to the taxpayer-bank as trustee. Under paragraph 8 of this indenture, the net income of the trust was to be paid to the decedent's daughter, Dora, for her life, and after her death the property was to go to her children or their issue *per stirpes*.

"However, the foregoing provisions were subject to paragraph 7 of the indenture where the decedent declared it to be his intention to create trust of equal amounts for each of his other three daughters, and to provide for all of his daughters equally. He then provided that if at the time of his death he had not created a trust fund in at least an equal amount for each of his other three daughters, and if the net value of his estate was greater than $40,-000, then and only if such were the facts, the trustee was to pay over the corpus of Dora's trust to the trustee under his will. If the decedent's wife survived him the trust for Dora was to continue until the death of the wife at which time the corpus was to be paid over to the trustee under his will.

"The decedent's wife and four daughters survived him. At the time of his death Dora had three living children and the decedent had not created trusts for his other three daughters.

"The fair market value, at the date of decedent's death, of the property in the 1936 trust was not less than $11,901.56. The value at decedent's death of Dora's interest in the trust, based upon the life expectancy of decedent's wife, Edith, was $3,761.25.

"In the estate tax return no amount was included in respect to the property of the 1936 trust. The Commissioner in the notice of deficiency included such property in decedent's gross estate at a value of $11,901.56, and the Tax Court upheld such inclusion. The return indicated an estate in excess of $40,000.

"Under the decedent's will, executed April 16, 1936, the residue of his estate was placed in trust with the taxpayer-bank as trustee. Under this testamentary trust, the income was payable to the decedent's wife for life to be used by her for the support of herself and the support of the children, in her discretion. Provision was also made for payment by the trustee to the decedent's wife, on her demand, of such sums out of principal as she should deem advisable for the use of herself or the children. The trustee was required to keep separate records of all sums so withdrawn, and to charge to the accounts of the children as advancements any amounts withdrawn for their respective uses. Upon death of the wife, the trust funds were to be divided into equal shares for the benefit of the children and their issue, *per stirpes*, after taking all advancements into account.

"The will further provided that if at the time of such division any child should still be pursuing its education, the trustee should continue to expend income and principal if necessary to further the educative endeavors of such child in the same manner the wife could have done if she had survived. It was also provided that at any time after division the trustee might sell a portion of any child's trust estate which might be necessary to support and maintain that child, in event of illness, misfortune or any other emergency.

The trustee was required to furnish at least once a year, upon the request by any one of the beneficiaries, a statement as to the condition of the trust. In his will the decedent made reference to his intention to set up certain trusts for his four daughters and to provide in the trust instruments that under certain circumstances the corpus of each of those trusts might be paid over to the trust created by his will. He directed that if those circumstances should arise his testamentary trustee should receive such property, merge it with the corpus of the testamentary trust and treat such property as if it had originally been a part of the corpus of the testamentary trust.

"The will provided for the termination of the trust as to each child upon that child's death and directed that the share be paid in accordance with such child's testamentary disposition, or in the absence of testamentary direction, to such child's issue.

"It was further provided that if at the time of the decease of the survivor of the testator and his wife, no children or descendants of children should be living, then the trustee should divide the principal of the estate into two equal parts and distribute them to the testator's heirs at law and to the heirs at law of his wife.

"The Commissioner determined that the interest in property passing to the trust under decedent's will did not qualify for the marital deduction, and the Tax Court upheld that determination."

In respect to the first question, the facts show that on January 8, 1952, the executor filed a federal estate tax return and an application under § 825(a) of the Code requesting the Commissioner to determine the amount of the tax as soon as possible and to discharge the executor from personal liability therefor upon payment of the amount to be specified in the notice. The statute provides that in such case the Commissioner shall notify the executor of the amount of the tax as soon as possible and in any event within one year after the application is made. In this instance the Commissioner's notice was dated January 7, 1955.

■ The executor contends that this was not a valid notice as to the estate because it was not given within a year after the application for the discharge, and that any deficiency should be assessed against the transferees of the estate. The executor further contends that even if the notice is valid as to the estate, the entire deficiency should not have been assessed against the executor as the representative of the estate but should be allocated between the residuary trust estate of the decedent and certain trust estates created by him in his lifetime.

These contentions cannot be sustained. The notice of deficiency is directed to the executor of the estate and does not purport to assert a personal liability against the executor or against the transferees. Consequently, no questions as to these liabilities arise at this time, and they will not arise in the future if the tax ultimately determined to be due is paid out of the estate. The notice of the deficiency, although delayed for more than a year after the application, was sufficient to support the determination of the deficiency against the estate. The only reference in § 825(a) to the discharge of liability for deficiency of the tax relates to the personal liability of the executor, and it has been repeatedly held that the statute does not affect the liability of the estate for taxes and that the executor may thus be held in his representative capacity despite the delay in notification of more than a year. See Branard v. Commissioner, 47 B.T.A. 947; Safe Deposit & Trust Co. of Baltimore v. Commissioner, 35 B.T.A. 259, affirmed on other points, 4 Cir., 95 F.2d 806; 1 Paul, Federal Estate & Gift Taxation, § 13.24.

■■ The contention that the deficiency should be allocated between the residuary trust estate and the inter vivos trust estates which are includable in the gross

estate of the decedent for purposes of the federal estate tax raises a question which the Tax Court need not decide. The will provided that all inheritance and estate taxes should be paid out of the corpus of the estate and it is argued that it was not the testator's intention to place the whole burden upon that part of the corpus which constitutes the residuary trust estate. That question, however, is a matter to be settled in appropriate proceedings in the state court between the interested parties in accordance with the applicable state law. It was held in Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 918, 86 L.Ed. 1197, that it was the intent of Congress that the federal estate tax should be paid out of the estate as a whole and that the disposition of the remaining estate and the ultimate impact of the federal tax should be determined under the state law. The responsibility for the payment of the federal estate tax rests upon the executor in his representative capacity and the government looks to him for the performance of this duty.

■ The second question relates to the determination of the Commissioner that the entire corpus of the trust created by the decedent by the indenture of April 13, 1936, for the benefit of his daughter Dora and her children should be included in the decedent's estate under the terms of § 811(c) (2) of the Code. This section provides that transfers intended to take effect in possession or enjoyment at or after the death of the decedent shall not be included in his gross estate for purposes of the federal estate tax unless the decedent has retained a reversionary interest in the property by the express terms of the instrument of transfer which exceeds in value more than 5 per cent of the value of the property immediately before decedent's death. The term "reversionary interest" includes a possibility that the property transferred by the decedent (A) may return to him or his estate or (B) may be subject to a power of disposition by him.

■ The executor first contends that the trust indenture of April 16, 1936, did not constitute a transfer of property intended to take effect in possession or enjoyment at or after the death of the grantor within the meaning of this clause of § 811(c) (2). This position cannot be sustained. As we have seen, the trust indenture transferred bonds in the sum of $10,000 to a trustee to pay the net income to the grantor's daughter Dora and after her death to transfer to her children. The transfer, however, was made subject to the provision that if the settlor did not create in his lifetime a trust fund of equal amount for each of his daughters and if the net value of his estate at the time of his death was more than $40,000, then the trustee was to pay over the corpus of the trust to the trustee to whom he gave the residue of his estate by a will executed on the same date as the transfer in trust. Furthermore, the trust indenture provided that if Dora should predecease the settlor without issue the property was likewise transferred to the testamentary trustee. Bearing these provisions in mind, it becomes clear that the disposition of the corpus of the 1936 trust estate was held in suspense and its ultimate disposition was not certain until the settlor's death. It follows that the transfer of the corpus of the trust estate was intended to take effect in possession or enjoyment at or after his death within the meaning of the Act. See Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 782.

■ The taxpayer also contends that the 1936 transfer did not fall within the provisions of the section because the decedent did not retain a reversionary interest in the property transferred. This contention is also untenable, because the Act provides that the term "reversionary interest" includes the possibility that the property transferred may be subject to a power of disposition by the decedent. In this instance the power existed because the trust instrument provided that, under certain contingencies, the trust should cease and the corpus of the trust property should go to the testamentary trustee to whom the residuary estate was bequeathed in the decedent's will for the

918

benefit of his wife and children. Since the decedent retained the power during his lifetime to change the provisions of his will relating to the disposition of the residuary estate, it is obvious that there was a possibility that the property transferred by the trust indenture might be "subject to a power of disposition by him."

The question remains whether the value of the entire corpus of the 1936 trust should have been included in the decedent's taxable gross estate or whether this value should be reduced by the value of the life estate created for the settlor's daughter Dora. The trust instrument provided that if the settlor's wife should survive him, as she did, then the trust should continue for Dora's benefit with the right to enjoy the income until the death of the wife. At the time of the decedent's death the fair value of the entire corpus of the 1936 trust was $11,-901.56 and the value of Dora's life estate, calculated on the basis of her mother's life expectancy, was $3,061.25.

■■ We think that the taxpayer's argument is well taken and that the value of the life estate should be deducted. The Tax Court's contrary conclusion was based upon the fact that Dora's right to enjoy the income from the trust after her father's death was dependent upon her mother surviving. With this provision of the trust indenture in mind the court based its conclusion on the statement in Commissioner of Internal Revenue v. Estate of Field, 324 U.S. 113, 116, 65 S.Ct. 511, 89 L.Ed. 786, that if the corpus of an inter vivos trust does not shed the possibility of reversion until or after the decedent's death, the value of the entire corpus on the date of death is taxable. The fact is, however, that the decedent retained no reversionary interest in the property transferred in so far as it consisted of the contingent life estate for the benefit of Dora, which came into possession upon her father's death provided his wife survived him. He retained no power to change the disposition of this life estate and hence it did not form a part of his

reversionary interest. It was said in Commissioner of Internal Revenue v. Estate of Field, supra, 324 U.S. at page 116, 65 S.Ct. at page 512, that "the estate tax is not based on the value of the reversionary interest of the decedent at the time of his death but on the value at the time of his death of the property to which that reversionary interest relates." Since the decedent's reversionary interest in the 1936 trust at the time of his death related to the value of the corpus less the value of Dora's life estate during the life of her mother, the value of that life estate should have been deducted from the value of the entire corpus in ascertaining the amount to be included in the gross estate of the decedent subject to the federal estate tax.

■ The final question relates to the claim that the estate is entitled under § 812(e) (1) (F) of the Code to a marital deduction for the interest passing under the will to the decedent's wife. The statute allows a deduction in the case of an interest passing from the decedent to a surviving spouse if the surviving spouse is entitled for life to all of the income from the corpus of the trust estate with power to appoint the whole corpus free from the trust. The executor claims that the wife of the decedent was given such an interest by the decedent's will, which placed the residue of the estate in trust for the benefit of the decedent's wife and children. After setting out the powers and duties of the trustee with respect to the principal and income of the trust property, the will directs the trustee to pay the net income to the wife during her natural life, "the same to be used by her for her support and maintenance and for the education, support and maintenance of our children in her discretion." Then follows the provision: "(a) I hereby authorize my trustee to pay to my said wife such sums of money out of the principal account of this trust fund as and when she may demand for her use and/or the use or benefit of our children as she deems advisable." The will further directs that the wife advise the trustee in writing of all sums so withdrawn for the

benefit or use of each child, respectively, and directs the trustee to keep separate records in the name of each child of all sums withdrawn for its use and to charge them against the portion to which the child would be entitled upon the division of the property at the death of the mother. At the death of the mother the property is to be divided amongst the children then living and the issue of any deceased child *per stirpes* and the trust is to continue as to any one that had not attained the age of 21 years with power in the trustee, if need be, to use the principal of such trust for the account of such minor in the same manner as his wife would have been able to do had she survived.

The executor claims that by this language the widow was given the unlimited and unrestricted right to demand and receive from the trustee for her own use such part of the principal of the trust fund as she saw fit, and therefore the interest passing to her falls within the provision of subsection (F) of the statute.

The Tax Court rejected this construction of the will in the following language:

"In the light of the rules of construction prevailing in South Carolina, it is our opinion that this language does not confer upon the surviving spouse an unlimited right to invade the corpus and appropriate it as virtually her own property. In reaching this conclusion we have considered all the terms of the will, set forth in detail in our findings. It seems clear to us, when the will is read as a whole, that the decedent intended that his surviving spouse should have the right to draw down only so much of the corpus as might be necessary for her personal use or for the use or benefit of the children, and that he contemplated that there would be an unused part of the corpus which should be retained for the benefit of his children. We are unable to find the above-quoted provision or in any other provision of the will an intent to give the wife the

right in her untrammeled discretion to demand all of the corpus and thus to completely destroy the trust.

\* \* \* \* \* \*

"Throughout the will in the instant case the decedent indicated solicitude for his children, and a desire that they should be benefited by the trust property. Thus, the surviving spouse is required to report to the trustee the amounts appropriated for the use of any child for purposes of determining the amount of each child's share of the remainder of the trust property at the time of ultimate distribution. The decedent contemplated that even after the death of his wife, the trustee should sell any portion of any child's trust estate which might be necessary to support that child in the event of illness, misfortune or other emergency. Furthermore, he contemplated that the corpus of each of certain trusts which he intended to set up during his life for the benefit of his children might under certain circumstances become a part of his testamentary trust. Such expressed intention of the testator regarding the future benefits for the children negatives the petitioner's contention that the surviving spouse was given an unlimited power to invade the corpus of the trust.

"Our conclusion that the surviving wife was not granted an unlimited power to appropriate the property as if she were the owner thereof is in general accord with the views expressed by the courts of South Carolina in cases involving the powers of life beneficiaries who have also the right to use corpus. See Lynch v. Lynch, 161 S.C. 170, 159 S.E. 26 [80 A.L.R. 997], and Blakely v. Blakely, 155 S.C. 123, 152 S.E. 24."

We are in accord with this interpretation of the will. It is supported by the later decisions of the Supreme Court of South Carolina in Rogers v. Rogers, 221 S.C. 360, 70 S.E.2d 637, and Shevlin v. Colony Lutheran Church, 227 S.C.

598, 88 S.E.2d 674. The earlier decisions in Bank of Charleston v. Dowling, 52 S.C. 345, 29 S.E. 788, and Howze v. Barber, 29 S.C. 466, 7 S.E. 817, upon which the taxpayer relies, do not require a different conclusion.

The order of the Tax Court is affirmed in part and reversed in part and the case is remanded for further proceedings.

Affirmed in part, reversed in part, and remanded.