ESTATE OF WILLIAM WIKOFF SMITH, DECEASED, GEORGE J. HAUPTFUHRER, JR., ADMINISTRATOR PRO TEM, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 16500–79.    Filed August 11, 1981.

P. J. *Diquinzio* and *Barbara W. Freedman*, for the petitioner.

*George F. Nofer* and *Thomas P. Glassmoyer*, for the proposed intervenor, Mary L. Smith.

*Richard S. Koffey* and *Herbert Odell*, for the proposed intervenors, Deborah L. McKechnie, Barbara S. Stevens, Sydney L. Smith, Leslie L. Smith, Douglas D. Smith, Charles H. Norris, Jr., and Margaret D. Hicks (residuary beneficiaries).

*Stephen E. Sokolic* and *Howard Philip Newman*, for the respondent.

## OPINION

FEATHERSTON, *Judge*: This case is before the Court on the motion of Mary L. Smith (hereinafter Mrs. Smith) to intervene. Objections to the motion have been made by George J. Hauptfuhrer, Jr., administrator pro tem, by respondent, and by the trustees and beneficiaries of the trusts created pursuant to decedent's will. The trustees and beneficiaries of the trusts have moved, alternatively, that they be granted permission to intervene if Mrs. Smith's motion is granted.

The motion by Mrs. Smith to intervene was denied by a Special Trial Judge's order dated March 12, 1980. Mrs. Smith appealed the order, and the Court of Appeals, on January 20, 1981, dismissed the appeal for lack of jurisdiction, without prejudice to Mrs. Smith, on the ground that the Special Trial Judge was not authorized to issue an order that would constitute a "decision" of the Tax Court. After oral argument, the parties have now submitted the matter to this division of the Court.

The crucial facts were stated by the Court of Appeals as follows:

Appellant [Mrs. Smith] is the widow of William Wikoff Smith, who died testate in January 1976. She was appointed executrix under the will, which provides a marital trust for her and a residuary trust for the decedent's children. Mrs. Smith elected to take against the will and, under Pennsylva-

nia law, became entitled to receive one-third the estate's net assets. Under the terms of the will, the residuary trust is liable for all death taxes.[1]

At the time of his death, Mr. Smith had substantial stock holdings in Kewanee Industries, Inc. In October 1976, Mrs. Smith, in her capacity as executrix, filed a federal estate tax return reporting a date of death value of approximately $13.00 per share. On August 8, 1977, some twenty months after her husband's death, these shares were sold at a price of $47.50 per share. On April 14, 1978, the executrix filed a federal income tax return on behalf of the estate, asserting that the $13.00 per share valuation was erroneous and that since the correct value should have been $47.50 per share, no gain had been realized on the sale.

The beneficiaries of the residuary trust then petitioned the Common Pleas Court of Montgomery County, where the estate was being administered, to remove Mrs. Smith as executrix because of a conflict of interest. The court found that Mrs. Smith had a "deep and personal financial interest in seeing that a high valuation be settled on this stock." If the value placed on the stock were low, a substantial capital gains tax would be paid by the estate, thereby reducing the estate's net assets and, consequently, her share. On the other hand, if the value as of the date of death were high, the resulting increased estate tax would be paid solely by the residuary trust. The Common Pleas Court accordingly relieved Mrs. Smith, as executrix, of her responsibility for determining the estate's taxes for the year 1977. For that limited purpose, George J. Hauptfuhrer, Jr. was appointed administrator pro tem.

Hauptfuhrer promptly wrote to counsel for Mrs. Smith and the residuary beneficiaries and requested information about the value of the stock. At his request Kidder, Peabody & Company, Inc. appraised the stock and concluded that the date of death value was between $26.00 and $29.00 per share. Hauptfuhrer also arranged to have counsel for all parties join him in a conference before the Internal Revenue Service Appeals Officer.

In September 1979, the Commissioner of Internal Revenue issued a notice of estate tax deficiency of $27,360,399.40 based upon a valuation of the Kewanee stock at $44.10 per share. The administrator filed a petition in the Tax Court seeking a redetermination of the deficiency.

Six weeks later Mrs. Smith moved to intervene, arguing that every dollar of difference in valuation would affect her to the extent of $500,000.00. The difference between the Kidder appraisal of $29.00 and her figure of $47.50 would therefore mean a loss of over $9,000,000.00. She alleged inadequate representation in the Tax Court because neither the administrator pro tem nor the Commissioner had any substantial interest in advocating her cause.

The Tax Court Rules of Practice and Procedure contemplate that an action challenging a determination of a deficiency in an estate tax will be instituted by a fiduciary on behalf of the

---

[1]Mrs. Smith's attorney has advised this Court that Mrs. Smith's share is relieved of estate taxes not by reason of the will but by virtue of Pennsylvania law. See Pa. Stat. Ann. tit. 20, sec. 3704(b)(1) (Purdon 1975).

estate. Rule 23(a)(1), Tax Court Rules of Practice and Procedure.[2] See *Estate of Tarver v. Commissioner*, 26 T.C. 490, 498 (1956), affd. in part and revd. in part 255 F.2d 913 (4th Cir. 1958). In such cases, the Court's jurisdiction is limited to a redetermination of the amount of the deficiency. Only a person to whom a notice of deficiency is addressed may be joined as a party in a Tax Court case under Rule 61(a). *Guarino v. Commissioner*, 67 T.C. 329, 331 (1976). Here, the only notice of deficiency that was mailed was sent to the "Estate of William W. Smith, Dec'd., George J. Hauptfuhrer, Jr., Admr. Pro Tem." Clearly, therefore, the joinder provisions of this Court's Rules would not permit Mrs. Smith to be made a party to this proceeding in the sense that a decision could be entered for or against her.

The Tax Court Rules do not provide for intervention. The Court, nonetheless, has permitted intervention in a few unique situations in which it concluded that the ends of justice required it to do so. See *Louisiana Naval Stores, Inc. v. Commissioner*, 18 B.T.A. 533, 536 (1929); *Central Union Trust Co. v. Commissioner*, 18 B.T.A. 300, 302–303 (1929); cf. *Commissioner v. Revere Land Co.*, 169 F.2d 469, 479 (3d Cir. 1948), revg. 7 T.C. 1061 (1946), cert. denied 335 U.S. 853 (1948). The nature of the intervenor's status in the light of the Tax Court's limited jurisdiction, however, has never been defined. See *Estate of Siegel v. Commissioner*, 67 T.C. 1033, 1041 (1977); *Cincinnati Transit, Inc. v. Commissioner*, 55 T.C. 879, 883 (1971), affd. per curiam 455 F.2d 220 (6th Cir. 1972). Nor have the circumstances in which intervention will be permitted been clearly delineated. The only general guideline thus far developed is that the allowance of intervention in a Tax Court proceeding is within the sound discretion of the Court. E.g., *May v. Commissioner*, 553 F.2d 1207 (9th Cir. 1977); *Levy Trust v. Commissioner*, 341 F.2d 93, 94 (5th Cir. 1965), affg. an order of this Court; *Cincinnati Transit, Inc. v. Commissioner, supra.*

Mrs. Smith's motion was not accompanied by a proposed petition or answer as intervenor setting forth specifically the claim or defense which she seeks to establish through intervention. However, her attorney has advised this Court that she

---

[2]Unless otherwise indicated, any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure.

should, as intervenor, be allowed to introduce testimony and other evidence, cross-examine witnesses, file and argue motions, and approve or disapprove of any proposed settlement of the case. In effect, apart from the entry of a formal decision, she asks to be placed on the same footing as the administrator pro tem in terms of the control of this litigation.

After careful consideration, we conclude that Mrs. Smith's motion to intervene must be denied.

(1) The orderly handling of the administration of an estate, including the determination of estate tax liabilities, flows from State laws governing the appointment of a fiduciary to collect the assets, pay the debts and taxes, distribute the remaining assets of an estate, and account to the appointing probate court. See Pa. Stat. Ann. tit. 20, sec. 3301 et seq., and sec. 3501.1 et seq. (Purdon 1975); *In re Speare's Estate*, 349 Pa. 76, 36 A.2d 489, 491 (1944). Administration of an estate and determination of its tax liabilities can be handled more efficiently by a fiduciary than by permitting each beneficiary to proceed in the manner dictated by his individual interests. Consistent with those principles, the Internal Revenue Code contemplates that Federal tax controversies will be handled by the fiduciary designated by the local court to supervise the administration of the estate. The statutory scheme for filing of the estate tax return, sec. 6018(a),[3] issuance of a notice of deficiency, secs. 6212(b)(3) and 6903, and the institution of Tax Court proceedings, sec. 6213(a), contemplates that the estate will act through a duly appointed fiduciary. In this case, the administrator pro tem has been charged by the Court of Common Pleas (hereinafter the Orphans' Court) with responsibility for conducting and concluding all proceedings for the determination of the estate's liability for Federal estate taxes. We think this State and Federal estate tax statutory scheme should be followed in the absence of weighty reasons to the contrary.

In this connection, it should be emphasized that the executor, administrator, or other fiduciary "has responsibility * * * to protect and preserve from depletion the total fund in which all the beneficiaries will share." *In re Estate of Morine*, 363

---

[3]All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise noted.

A.2d 700, 704 (Me. 1976). He has an equal obligation of fidelity to all beneficiaries of the estate. See, e.g., *Estate of Bosico,* 488 Pa. 274, 412 A.2d 505, 507 (1980); *In re Estate of Morine, supra* at 704. The administrator pro tem in the instant case, therefore, may not properly take a position which is designed to favor any one of the beneficiaries as opposed to another one.

Counsel for Mrs. Smith advised this Court that "we do not in any way imply, in fact would firmly deny that we think the administrator here has any personal motivation toward one party or the other." We interpret this statement as a concession that the administrator pro tem is making an objective, conscientious effort to establish the true fair market value of the stock. We do not think Mrs. Smith is entitled in this proceeding to have an effort made to establish a greater or smaller value for the stock.

(2) The only issue in the instant case is the amount of Federal estate tax owed by the estate. The estate's income tax for 1977 is not at issue here. Significantly, as pointed out by the Court of Appeals, the residuary trust bears the burden of the estate tax ultimately determined to be due in the instant case. Thus, Mrs. Smith has no financial interest in the decision, as such, to be entered by this Court in the instant case. Her only concern is a derivative one in the sense that this Court's finding of fact as to the date of death value of the Kewanee stock for estate tax purposes may ultimately be treated as the estate's basis of the stock (sec. 1014(a)), in determining the estate's 1977 income tax liability.

We recognize that the amount at stake in the estate's potential income tax liability for 1977—which will affect Mrs. Smith's distributive share—is large. In principle, however, her position is not substantially different from that of any specific legatee in a case in which the death taxes are to be paid from the residual estate. In such cases the specific legatee, as a general rule, takes as his basis for income tax purposes the value of the legacy at the decedent's death. Sec. 1014; but see secs. 2032 and 2032A. Therefore, it is usually to the specific legatee's advantage to have the value of his legacy determined to be as great as possible in case the property which is the subject matter of the legacy is later sold or becomes subject to depreciation. On the other hand, residual beneficiaries in such a case usually would benefit by having the lowest possible

value placed on the legacy so as to minimize estate taxes. Nonetheless, the executor or other fiduciary files the estate tax return declaring the value of the individual assets, receives the notice of deficiency, if any, and handles any subsequent tax litigation on behalf of the estate. See *Estate of Siegel v. Commissioner, supra* at 1041.

(3) To allow Mrs. Smith and all the other parties whose financial interests may be affected by some of the findings of fact in this case to intervene would unduly complicate this estate tax case. If Mrs. Smith is permitted to intervene, it seems only reasonable that Deborah L. McKechnie, Barbara S. Stevens, Sydney L. Smith, and Leslie L. Smith, individually, and Margaret D. Hicks, guardian of the property of Douglas D. Smith, a minor, as residuary beneficiaries of the trusts under the decedent's will, and Deborah L. McKechnie, Barbara S. Stevens, Charles H. Norris, Jr., and Margaret D. Hicks, as individual trustees of the residuary trusts under decedent's will, would likewise be entitled to intervene. As beneficiaries of the residuary estate which bears the estate tax, the only tax here in issue, they will be more directly affected by the outcome of this case than will Mrs. Smith. Because Pennsylvania tax liabilities may be affected by the litigation, it would also seem that the State of Pennsylvania would also have much the same arguments to support a motion that it be permitted to intervene. Others may have an interest in the outcome of this case and would arguably also be entitled to intervene. We do not think any such situation was ever intended by the statutes controlling the determination of estate tax liabilities.

(4) To permit Mrs. Smith to intervene, moreover, would frustrate the Orphans' Court order relieving her of responsibility and appointing the administrator pro tem to handle the instant dispute. According to the decree of the Orphans' Court, the administrator pro tem was appointed—

to conduct and conclude all proceedings with any administrative agency or any court of proper jurisdiction relating in any manner whatsoever to the determination of the liability of the estate for federal estate and state death taxes, with particular reference to the death tax value of the decedent's stock of Kewanee Industries, Inc. * * *

Further, the administrator pro tem was to have "the same powers and discretion" as if he had been initially appointed as

personal representative. If Mrs. Smith is placed in a position where she can veto any settlement of the case in this Court and can participate in the trial as if she were a party, the administrator pro tem will not be able to "conduct and conclude" the instant case on behalf of the estate as authorized by the Orphans' Court. Mrs. Smith, on the other hand, would have, as a practical matter, much the same power as was denied her by the Orphans' Court when it appointed the administrator pro tem. The Orphans' Court has responsibility for dealing with conflicts of interests among the beneficiaries of the estate (*Riggs v. Del Drago*, 317 U.S. 95, 98–99 (1942); *Estate of Tarver v. Commissioner*, 255 F.2d 913, 917 (4th Cir. 1958), affg. in part and revg. in part 26 T.C. 490 (1956)), and we do not think we should compromise the action taken in this respect by the Orphans' Court by restoring Mrs. Smith's power to control this litigation. Cf. *Estate of Siegel v. Commissioner*, *supra* at 1041–1042.

(5) In reaching the conclusion that intervention should not be permitted, we note that, contrary to the assertions by counsel for Mrs. Smith, the District Courts have, as a general rule, declined to grant permissive intervention in tax refund suits. In *Pierson v. United States*, 71 F.R.D. 75, 81–83 (D. Del. 1976), a corporation, which had paid (or obligated itself to pay) all deficiencies due from the shareholders of a second corporation which was a party to a reorganization, was denied the right to intervene in a refund action by a shareholder of the second corporation contesting the taxability of the reorganization. The court held in part that the waiver of sovereignty contained in 28 U.S.C. 1346(a)(1) is limited and that a person seeking permissive intervention under rule 24(b), Federal Rules of Civil Procedure, must show an independent jurisdictional basis for his claim. To the same effect, see *Hofheinz v. United States*, 511 F.2d 661, 662 (5th Cir. 1975); *Peterson v. United States*, 41 F.R.D. 131, 134 (D. Minn. 1966). Cf. *Eighth Street Baptist Church, Inc. v. United States*, 431 F.2d 1193, 1194 (10th Cir. 1970); but see *Chalmers v. United States*, 43 F.R.D. 286, 289 (D. Kan. 1967).

(6) Mrs. Smith's counsel has advised the Court that he thinks the administrator pro tem is making a mistake of law in failing to argue that events subsequent to the decedent's death—the sale of the Kewanee stock to Gulf on August 8,

1977—should be given great weight in valuing the stock. The order denying Mrs. Smith's motion will authorize her, if she so desires, to file a pretrial brief amicus curiae stating her position on this potentially controversial issue so that the administrator pro tem and this Court will have full knowledge of her legal position. Denial of her motion to intervene, moreover, is not intended to preclude the judge to whom the case is assigned for trial from authorizing her to file a post-trial brief amicus curiae if she wishes to do so.

To reflect the foregoing,

*An appropriate order will be entered.*