T.C. Memo. 2016-131

UNITED STATES TAX COURT

AMAZON.COM, INC. & SUBSIDIARIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 31197-12.                    Filed July 18, 2016.

John B. Magee, Sanford W. Stark, Julia Mara Kazaks, and Rajiv Madan, for petitioner.

Jill A. Frisch, Melissa D. Lang, Lloyd T. Silberzweig, Anne O'Brien Hintermeister, and Mary E. Wynne, for respondent.

MEMORANDUM OPINION

LAUBER, Judge: This case was tried during November and December 2014 in Seattle, Washington, where petitioner has its principal place of business. The case is currently under advisement. On March 25, 2016, the Court received a

**[*2]** Motion to Intervene by Non-Party Guardian News & Media, LLC (Guardian or Movant). Movant is the U.S. affiliate of the Guardian, a major British newspaper. Guardian seeks to intervene in this case for the purpose of urging the Court to unseal, or to make available in unredacted form, certain components of the trial record that have been sealed pursuant to a protective order.

Guardian represents that it "recently published an investigation focusing on Amazon's decision to move [certain] business operations to Luxembourg" and expresses the view that the documents in question "reach matters of intense public interest." We will hold Guardian's motion in abeyance until the parties have exercised their rights under the protective order with a view to determining which portions of the trial record will have the seal removed and which portions contain Confidential Information (as defined in the protective order) that must be sealed permanently.

Background

The facts set forth herein are stated solely for the purpose of deciding this motion and not as findings of fact in this case. See Rule 1(b); Fed. R. Civ. P. 52(a); Cook v. Commissioner, 115 T.C. 15, 16 (2000), aff'd, 269 F.3d 854 (7th Cir. 2001). The deficiencies at issue, for tax years 2005 and 2006, arise from a cost-sharing arrangement (CSA) that petitioner (Amazon or petitioner) executed

[*3] with Amazon Europe Holdings Technologies SCS (AEHT), a Luxembourg affiliate. Under the CSA, petitioner transferred preexisting intangible assets to AEHT, and the parties agreed to share future intangible development costs (IDCs).

This case will require the Court to determine (among other things) the proper amount of AEHT's buy-in obligation with respect to the transferred property (including technology, trademarks, and customer information) under section 1.482-7(a)(2) and (g)(2), Income Tax Regs.[1] The Court will also be required to determine the portion of petitioner's costs properly allocable to IDCs, which affects the cost-sharing payments required of AEHT. See sec. 1.482-7(a)(1), (d)(1), Income Tax Regs. In order to decide these issues, the Court received into evidence voluminous information bearing on the value of the transferred property, including Amazon's technology, source code, trademarks, customer information, and non-public financial data.

With a view to protecting such sensitive information from public disclosure, petitioner in July 2013 moved for a pre-trial protective order. Respondent opposed entry of a protective order. Following lengthy discussions with the parties,

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. Section 1.482-7, Income Tax Regs., was redesignated section 1.482-7A, Income Tax Regs., with the promulgation of new regulations effective January 5, 2009. See T.D. 9441, 2009-7 I.R.B. 460, 473.

**[*4]** the Court indicated that it was disposed to issue a protective order and urged the parties to work toward a compromise draft. In November 2013 the parties proposed, and the Court adopted, a protective order implementing procedures to protect Amazon's trade secrets, proprietary technology, and non-public financial information (collectively, Confidential Information) during the pre-trial phase of the case. On March 12, 2014, we amended that November 19, 2013, protective order to add provisions governing the production of source code and other highly sensitive technical data.

On October 6, 2014, petitioner moved for a protective order covering the trial and post-trial phases of the case. This motion was supported by affidavits from Scott R. Hayden, Vice President and Associate General Counsel for Intellectual Property at Amazon, and from Shelley L. Reynolds, Vice President, Worldwide Controller and Principal Accounting Officer for Amazon. These affidavits averred that Amazon maintains the highest level of protection for the Confidential Information; that certain Confidential Information has been licensed to third parties under agreements barring its disclosure; and that if Amazon's competitors gained access to the Confidential Information, Amazon and its shareholders would suffer significant economic harm.

**[*5]**  Petitioner did not ask the Court to seal the entire trial or the entire trial record.  Rather, it proposed that specific documents or portions of documents, and specific testimony or portions of testimony, be sealed to the extent necessary to prevent disclosure of its Confidential Information.  On October 20, 2014, respondent filed a notice of objection, again contending that Amazon had not shown good cause for entry of any protective order at all.

We concluded that Amazon had established by affidavit the proposition that disclosure of its Confidential Information would damage the company and its shareholders by revealing "trade secrets or other confidential information."  Sec. 7461(b)(1).  The Court discussed Amazon's proposed protective order with the parties in a series of telephone conferences, and petitioner revised various aspects of its proposal to address concerns expressed by respondent and the Court.  On October 20, 2014, the Court issued a protective order covering the trial and post-trial phases of the case, stating as follows:

> It is the goal of this Court to provide as robust a public record as possible while protecting petitioner's Confidential Information. We are satisfied that the terms of the protective order set forth below will enable the largest possible percentage of the trial record to be made available for ultimate public inspection, consistently with the protection of Amazon's proprietary business and technological information.

**[\*6]**   The parties filed comprehensive pre-trial memoranda.  With minor redactions, those memoranda have been placed on the docket for public inspection. Trial testimony that did not elicit Confidential Information was heard in open court; transcripts of that testimony have been placed on the docket for public inspection.  Trial testimony that elicited Confidential Information was heard in closed court; the parties are working toward finalizing redacted versions of those transcripts to be submitted to the Court for approval.  If and when they are approved, these redacted transcripts will be placed on the docket for public inspection.

Trial exhibits that Amazon did not designate as containing Confidential Information are currently available for public inspection upon request.  These exhibits include redacted versions of all expert witness reports (56 in toto).  Trial exhibits that Amazon designated as containing Confidential Information were given exhibit numbers with the prefix "C."  Respondent retains the right under the protective order to challenge petitioner's classification of exhibits as containing Confidential Information.

The parties filed post-trial briefs that include more than 1,500 pages of proposed findings of fact, objections to proposed findings of fact, and legal argument. Redacted versions of those documents have been placed on the public record.  All

[*7] in all, the pre-trial memoranda and post-trial briefs total 2,689 pages; 2,480 of these pages (or 92%) contain no redactions at all.

On March 25, 2016, the Court filed Guardian's motion to intervene. Guardian has requested access to 16 specified items, including 14 trial exhibits.[2] Of those 14 trial exhibits, only eight are "C" exhibits designated as containing Confidential Information. Regardless of whether Guardian is allowed to intervene, it is free to request copies of trial exhibits that are not "C" exhibits. If "C" exhibits are unsealed or placed on the public record in redacted form, Guardian will also be free, at a later date, to request copies of those documents.

Petitioner has objected to the granting of Guardian's motion to intervene. Respondent has filed a notice of no objection.

Discussion

A.    Protective Orders

Section 7458 provides that "[h]earings before the Tax Court and its divisions shall be open to the public." Section 7461(a) similarly provides that "all evidence received by the Tax Court and its divisions, including a transcript * * * of the hearings, shall be public records open to the inspection of the public." An

---

[2]Guardian also requested access to an unredacted version of a stipulation of facts dealing with "Tax Reporting" and to certain sealed transcripts of trial testimony.

**[*8]** exception to these general rules is set forth in section 7461(b)(1), captioned "Trade Secrets or Other Confidential Information." It provides that the Court "may make any provision which is necessary to prevent the disclosure of trade secrets or other confidential information, including a provision that any document or information be placed under seal to be opened only as directed by the court."

Rule 103(a) implements these statutory provisions. It provides that, upon motion supported by good cause, "the Court may make any order which justice requires" to ensure that "a trade secret or other information not be disclosed or be disclosed only in a designated way." Rule 103(a)(7). Such an order may include directions that the parties file "specified documents or information enclosed in sealed envelopes" and that "written materials, after being sealed, be opened only by order of the Court." Rule 103(a)(6), (8).

Rule 103(a) resembles rule 26(c)(1) of the Federal Rules of Civil Procedure (Civil Rules), and this Court generally follows decisions interpreting Civil Rule 26 when considering requests for protective orders. See Willie Nelson Music Co. v. Commissioner, 85 T.C. 914, 916-917 (1985). A protective order is appropriate where the material is the type of information that courts will protect and the requesting party shows good cause for protecting it. Publicker Indus., Inc. v. Cohen,

**[*9]** 733 F.2d 1059, 1071 (3d Cir. 1984); <u>Estate of Murphy v. Commissioner</u>, T.C. Memo. 1990-346, 60 T.C.M. (CCH) 73, 75.

These longstanding protections for sensitive business and financial information are fully consistent with Guardian's qualified right of access, which is the same interest held by the public at large. See, e.g., <u>Richmond Newspapers, Inc. v. Virginia</u>, 448 U.S. 555, 573 (1980) (noting that "media representatives enjoy the same right of access as the public"); <u>Branzburg v. Hayes</u>, 408 U.S. 665, 684 (1972) ("It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally.").

B.    <u>Intervention</u>

The issue at hand is whether Guardian should be permitted to intervene in this case. With limited exceptions inapplicable here,[3] our Rules make no provision for third-party intervention. In the absence of an express Rule, the Court "may prescribe the procedure, giving particular weight to the Federal Rules of Civil Procedure to the extent that they are suitably adaptable to govern the matter

---

[3]<u>See</u> Rule 216(a) (permitting intervention by PBGC or Secretary of Labor in certain retirement plan actions); Rule 225 (permitting intervention in actions with respect to section 6110 written determinations); Rule 245(a) (permitting intervention in certain partnership actions); Rule 325(b) (permitting intervention by the non-electing spouse in action for relief from joint and several liability).

**[\*10]** at hand." Rule 1(b); see Guralnik v. Commissioner, 146 T.C. __, __ (slip op. at 28-31) (June 2, 2016); Amazon.com, Inc. & Subs. v. Commissioner, T.C. Memo. 2014-245; Estate of Proctor v. Commissioner, T.C. Memo. 1994-208, 67 T.C.M. (CCH) 2943.

Civil Rule 24(a) governs intervention of right. It provides that a court must permit intervention where the movant is given "an unconditional right to intervene by a federal statute" or "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Guardian does not contend, and it could not plausibly contend, that it is entitled under these standards to intervention of right.

Civil Rule 24(b)(1) governs permissive intervention. The Court of Appeals for the Ninth Circuit has ruled that an applicant for permissive intervention must generally meet certain threshold requirements, including a showing that his "claim or defense, and the main action, have a question of law or a question of fact in common." Perry v. Proposition 9 Official Proponents, 587 F.3d 947, 955 (9th Cir. 2009) (quoting NW. Forest Res. Council v. Glickman, 82 F.3d 825, 839 (9th Cir. 1996)). "[S]uch a strong nexus of fact or law" is generally not required "when a party seeks to intervene only for the purpose of modifying a protective order."

[*11] <u>Beckman Indus., Inc. v. Int'l Ins. Co.</u>, 966 F.2d 470, 473-474 (9th Cir. 1992) (allowing permissive intervention where movant sought to modify a protective order to obtain deposition transcripts needed for other pending litigation); <u>see</u> <u>San Jose Mercury News, Inc. v. U.S. Dist. Court</u>, 187 F.3d 1096, 1100 (9th Cir. 1999). The court may consider other factors in the exercise of its discretion, including "the nature and extent of the intervenor's interest" and whether that interest is "adequately represented by other parties." <u>Perry</u>, 587 F.3d at 955 (quoting <u>Spangler v. Pasadena City Bd. of Educ.</u>, 552 F.2d 1326, 1329 (9th Cir. 1977)).

"The Tax Court, like other Federal courts, may permit intervention by third parties in those unique situations where the ends of justice so require." <u>See</u> <u>Estate of Proctor</u>, 67 T.C.M. (CCH) at 2944. "[T]he allowance of intervention in a Tax Court proceeding is within the sound discretion of the Court." <u>Estate of Smith v. Commissioner</u>, 77 T.C. 326, 329 (1981). We have allowed permissive intervention where "the moving party has a stake in the outcome of the litigation" that "cannot be adequately protected by the parties currently before the Court" and where "permitting the intervention will lead to a more complete presentation of the legal issues to be decided." <u>Ibid.</u> We have denied motions to intervene where the movant failed to show that a party "was taking a position that was contrary to the moving party's interests in the litigation." <u>Ibid.</u>; <u>see</u> <u>Sampson v. Commissioner</u>,

**[\*12]** 81 T.C. 614, 617 (1983), <u>aff'd without published opinion</u>, 829 F.2d 39 (6th Cir. 1987). If a party is adequately representing the interests the movant seeks to advance, the Court may deny intervention.

The public interest that Guardian seeks to advance has been, and continues to be, powerfully represented by respondent. Respondent has objected to the issuance of a protective order at every stage of this litigation. When the Court indicated its intention to issue a protective order of some kind, respondent worked assiduously to narrow the scope of protection and to ensure himself the ability to challenge petitioner's designation of information as "confidential."

In so doing, respondent's attorneys faithfully adhered to the policy set forth in the Internal Revenue Manual (IRM). It instructs Internal Revenue Service lawyers to oppose most requests for protective orders because "[t]he Office of Chief Counsel, in representing the public interest, has an obligation to protect the integrity of the tax litigation process by encouraging transparency in the judicial workings of the Tax Court." IRM pt. 35.4.6.5(10) (Aug. 16, 2010). Throughout the trial and post-trial phases of this case, the IRS has exercised its rights under the protective order to ensure that the public will have available to it all information that is not properly classified as "trade secrets or other confidential information." Sec. 7461(b)(1). Although the redaction process has not yet been completed, the

**[*13]** Court is confident that respondent will continue to assert his rights, and those of the public, under the protective order.

Guardian has not cited, and our own research has not discovered, any instance in which this Court, or any other court, has been asked to decide whether a media organization should be allowed to intervene in a pending Federal tax controversy. Guardian's motion presents novel questions, both as to the proper standards for intervention in the absence of any Rule governing the subject, and as to whether the IRS, as an agency of the United States, adequately represents Guardian's interest in public disclosure. Cf. Prete v. Bradbury, 438 F.3d 949, 956-957 (9th Cir. 2006) ("[There is] an assumption of adequacy when the government is acting on behalf of a constituency that it represents. In the absence of a very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the [intervention] applicant shares the same interest." (quoting Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003))).

We are hesitant to address these questions until it is necessary to do so. Under the process outlined in the protective order, the parties are currently finishing their review of transcripts to determine what information should remain sealed. Once the parties have completed their review, they will submit the agreed-upon redactions, together with any redaction-related matters on which they do not agree,

[*14] to the Court for review and resolution. The Court will make the ultimate decision as to which portions of the record must remain permanently sealed as containing "trade secrets or other confidential information." Sec. 7461(b)(1). Once this process has been completed, the documents Guardian seeks may become available for public inspection, by agreement of the parties or by order of the Court, and Guardian's motion may become moot.

Guardian can now access the parties' briefs and pre-trial memoranda, which have been placed on the public record in redacted form. The unsealed portions of the trial transcript are currently available for public inspection, and the Court expects that redacted versions of the closed trial sessions should be available in the next two months. Guardian can request copies now of any trial exhibits that do not bear the "C" prefix, which include five of the specific documents to which it seeks access.[4] Other trial exhibits may become available once the parties have completed, under the Court's supervision, the review procedures ordained by the Court's protective orders. For these reasons, we will hold Guardian's motion to intervene in abeyance until these review procedures have been more fully completed.

---

[4] Although six of the exhibits do not bear the "C" prefix, one exhibit was not admitted into evidence.

**[\*15]** To reflect the foregoing,

An appropriate order will be issued.
